[No. S067104. July 31, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
CRUZ ALBERTO MENDOZA et al., Defendants and Appellants.

## COUNSEL

William D. Farber, under appointment by the Supreme Court, for Defendant and Appellant Cruz Alberto Mendoza.

David McNeil Morse, under appointment by the Supreme Court, for Defendant and Appellant Raul Valle.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and John R. Vance, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CHIN, J.—Under Penal Code section 1157,[1] "[w]henever a defendant is convicted of a crime . . . which is distinguished into degrees," the trier of fact "must find the degree of the crime . . . of which he is guilty. Upon the failure of the [trier of fact] to so determine, the degree of the crime . . . of which the defendant is guilty, shall be deemed to be of the lesser degree." Here, we consider this section's applicability under the following circumstances: (1) the prosecution's only murder theory at trial is that the killing was committed during perpetration of robbery or burglary, which is first degree murder as a matter of law (§ 189); (2) the court properly instructs the jury to return either an acquittal or a conviction of first degree murder; and (3) the jury returns a conviction for murder, but its verdict fails to specify the murder's degree. We conclude that under these circumstances, section 1157 does not apply because the defendant has not been "convicted of a crime . . . which is distinguished into degrees" within the meaning of that section. Thus, the conviction is not "deemed to be of the lesser degree." (§ 1157.) We therefore affirm the Court of Appeal's judgment.

### FACTS

On September 22, 1992, the Marin County Grand Jury returned an indictment accusing defendants Cruz Alberto Mendoza and Raul Antonio Valle of, among other crimes, "[m]urder in violation of Section 187(A)," second degree robbery (§ 211), and burglary (§ 459). These charges arose out of the killing of Pastor Dan Elledge at The Lord's Church in Novato, California. As special circumstances for sentencing purposes, the indictment also alleged that defendants committed murder while they were engaged in committing robbery and burglary. (§ 190.2, subd. (a)(17).)

After the trial court granted defendants' motion for separate trials, the prosecution presented its evidence against defendants simultaneously to separate juries. As to both defendants, the prosecution's only murder theory was that Valle and Mendoza shot and killed Pastor Elledge while burglarizing and robbing The Lord's Church (as one in a series of church robberies). Under section 189, all murder committed "in the perpetration of" robbery or

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

burglary "is murder of the first degree." After the close of evidence, the trials proceeded independently for purposes of jury instruction, closing arguments, and return of the verdicts.

## A. *Mendoza Proceedings*

In his defense, Mendoza, who admitted committing other crimes with (and without) Valle, maintained he never entered The Lord's Church and did not participate in any of the crimes Valle committed there, including Pastor Elledge's killing. In connection with the charge for that killing, Mendoza did not contend the jury could convict him of a degree or form of criminal homicide other than first degree felony murder. Nor did he ask the trial court to instruct the jury on lesser included offenses; his counsel agreed that because the prosecution had presented only a first degree felony-murder case, instructions relating to specific intent for other forms of first degree murder were unnecessary. Thus, Mendoza's counsel expressly declined to request instructions on malice aforethought and premeditation and deliberation. At other points during the discussion of the instructions, Mendoza's counsel expressed his understanding that the prosecution's only murder theory was first degree felony murder.

Consistent with these proceedings, the trial court instructed Mendoza's jury only on first degree felony murder as follows: "The defendant is accused in Count One of the indictment of having committed the crime of murder, a violation of Penal Code Section 187. [¶] Every person who unlawfully kills a human being during the commission or attempted commission of robbery or burglary is guilty of the crime of murder, in violation of Section 187 of the Penal Code. [¶] For clarification, that is one definition, that is not the only definition of murder, it's the only one that applies to the facts of this case. [¶] In order to prove such crime, each of the following elements must be proved: A human being was killed; the killing was unlawful; and the killing occurred during the commission or attempted commission of robbery or burglary. [¶] The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime of robbery or burglary, is murder of the first degree when the perpetrator had the specific intent to commit such crime. [¶] The specific intent to commit robbery or burglary and the commission or attempted commission of such crime must be proved beyond a reasonable doubt. [¶] If a human being is killed by a person engaged in the commission or attempted commission of the crimes of robbery or burglary, all persons who either personally committed the robbery or burglary, or who aided and abetted the robbery or burglary, are guilty of murder in the first degree, whether the killing is intentional, unintentional, or

accidental. [¶] For purposes of determining whether a person is guilty of murder in the first degree, a defendant who does not form an intent to aid and abet a participant in a robbery or burglary before a murder has occurred is not guilty of murder in the first degree. [¶] Thus, if you have a reasonable doubt whether Defendant Mendoza was the actual killer, you may not convict him of murder in the first degree unless the prosecution proves beyond a reasonable doubt that he formed the intent to aid and abet in the robbery before the murder occurred. [¶] If you find the defendant in this case guilty of murder in the first degree, you must then determine if one or more of the [alleged] special circumstances are true or not true."

The court also gave the following instruction: "In order to find the defendant guilty of the crime of murder, as charged in Count One, you must be satisfied beyond a reasonable doubt that, first, the crimes of robbery and burglary, charged in Counts Two and Three, were committed; and, second, the defendant aided and abetted such crimes; and, third, a co-principal in such crime committed the crimes of robbery or burglary as charged in Counts Two and Three; and, fourth, the crime of murder was a natural and probable consequence of the commission of the crimes of robbery or burglary as charged in Counts Two and Three."

In addition, in instructing on the "lesser crime[s]" of which the jury could convict Mendoza if it found him not guilty of the charged crimes, the court did not mention any form of criminal homicide other than first degree felony murder. Consistent with these instructions, the verdict forms the court submitted to the jury did not give the jury the option to convict defendant of second degree murder or any other form of criminal homicide.

During its closing argument to the jury, the prosecution reaffirmed its focus on only first degree felony murder, explaining: "In order to find the defendant guilty of the crime of murder as charged [in] this Count 1, you must be satisfied beyond a reasonable doubt, folks, of the following: [¶] The crimes of robbery or burglary . . . were committed, that the defendant aided and abetted such crimes. I submit to you [he] not only aided and abetted but he actively participated as well in those crimes, a co-principal in such crime committed, the crimes of robbery or burglary as charged in Counts II or III with . . . Valle, and the crime of murder was a natural and probable consequence of the commission of the crimes of robbery or burglary as charged in Count II and III." The prosecution further explained: "Murder has been defined for you. . . . In this case it is the killing which occurred during the commission . . . or attempted commission of a robbery or burglary. It is a first degree murder where the unlawful killing of a human being whether intentional, unintentional or accidental occurs during the

commission or an attempted commission of the crime of robbery or burglary. And that is murder in the first degree when the perpetrator had the specific intent to commit the crime of either the robbery or the burglary. [¶] So, if you folks find that Mr. Mendoza was perpetrating a burglary and Mr. Valle [was] perpetrating a burglary and/or a robbery and that Pastor Elledge was killed during the commission of those crimes, [then] he is guilty of first degree felony murder. And that is what the People submit to you the proof beyond a reasonable doubt shows in this case."

As a transition to discussing the special circumstances instructions, the prosecution then remarked: "Now, there's an instruction separate from the first degree murder which is the felony murder which we just discussed with the instruction." In summing up, the prosecution asserted that the evidence proved beyond a reasonable doubt that Mendoza was "guilty of first degree murder" in connection with Pastor Elledge's killing because he entered The Lord's Church "with the intent to perpetrate a robbery and a burglary of that church." The prosecution concluded by insisting that Mendoza was "legally responsible for the felony murder of Dan Elledge."

Mendoza's counsel began his closing argument by telling the jury: "Your job is to decide whether Alberto Mendoza is guilty of first degree murder at The Lord's Church on August 26th, 1992. . . . [¶] This case is not about whether Mr. Mendoza is guilty of the robberies in Cerritos, Fairfield, San Jose or San Rafael. He's admitted to you his guilt for those crimes. What it is about and the main decision you will have to make is whether he is guilty of the first degree murder that is charged in Novato at The Lord's Church." Defense counsel also stressed the prosecution's assertion that "[i]t's all or nothing," i.e., that the prosecution has "either proven to you that [Mendoza] was in there doing this crime with [Valle] beyond a reasonable doubt, or he's not guilty." In summing up, defense counsel argued: "So, has the District Attorney proven Alberto Mendoza guilty beyond a reasonable doubt of first degree murder? I say that he has not." Counsel concluded: "You should acquit Mr. Mendoza of first degree murder. He did not burglarize The Lord's Church. He did not rob Daniel Elledge. He did not kill Daniel Elledge. He is innocent of these crimes."

The jury found Mendoza "guilty of the offense charged in Count I, a felony, to wit, murder in violation of Section 187(a) of the Penal Code of the State of California." After the clerk read this verdict aloud, the court asked each juror to indicate " 'yes' or 'no' whether or not that was your vote on the charge of murder 187 first degree." Each juror answered, "Yes." The clerk then announced the jury's true findings regarding the special circumstances, i.e., that Pastor Elledge's murder "was committed by the defendant Alberto

Mendoza while [he] was engaged in the commission of the crime of robbery" and "in the commission of the crime of burglary in the second degree." As to the other charges arising from the events at The Lord's Church, the clerk also read the jury's guilty verdicts on burglary and second degree robbery. At the penalty phase of the trial, the jury found that Mendoza's penalty should be life in prison without possibility of parole, rather than death. The trial court subsequently entered a judgment against Mendoza for first degree murder and sentenced him in accordance with the jury's finding. The Court of Appeal affirmed the judgment.

### B. *Valle Proceedings*

At trial, Valle conceded his guilt of all substantive charges but contested the special circumstances allegations. Thus, he *admitted* having committed first degree felony murder (as well as burglary and robbery) with Mendoza at The Lord's Church. However, he maintained Mendoza had fired the fatal gunshots. Based on this contention, Valle also argued that at the time of the murder, he lacked the mental state a mere participant must have for a true finding on the special circumstances allegations. In making this argument, he relied on evidence that at the time of the murder, he suffered from posttraumatic stress syndrome related to prior combat experiences in El Salvador.

Consistent with the prosecution's theory and Valle's defense, the trial court instructed Valle's jury only on first degree felony murder as follows: "The defendant is accused in Count One of the Indictment of having committed the crime of murder, a violation of Penal Code Section 187. [¶] Every person who unlawfully kills a human being during the commission or attempted commission of robbery or burglary, is guilty of the crime of murder, in violation of Section 187 of the Penal Code. [¶] In order to prove such crime, each of the following elements must be proved: First, a human being was killed; second, the killing was unlawful; and third, the killing occurred during the commission or attempted commission of robbery or burglary. [¶] The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime of robbery or burglary, is murder of the first degree when the perpetrator had the specific intent to commit such crime. [¶] The specific intent to commit robbery or burglary and the commission or attempted commission of such crime must be proved beyond a reasonable doubt. [¶] In order for an accused to be guilty of murder as an aider and abettor of a burglary, he must have formed the intent to encourage or facilitate the perpetrator prior to or at the time the perpetrator entered [T]he Lord's Church with the required specific intent. [¶] For an accused to be guilty of . . . murder, as an aider and abettor to a robbery, he must have

formed the intent to encourage or facilitate the robbery prior to or during the commission of the robbery. [¶] If a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime of robbery or burglary, all persons who either directly or actively commit the act constituting such crimes, or with knowledge of the unlawful purpose of the perpetrator of the crimes, and with the intent or purpose of committing, encouraging or facilitating the commission of the offenses, aids, promotes, encourages or instigates by act or advice its commission, are guilty of murder of the first degree whether the killing is intentional, unintentional, or accidental. [¶] If you find the defendant in this case guilty of murder of the first degree, you must determine if one or more of the [alleged] special circumstances are true or not true." As in Mendoza's trial, the trial court's instructions on the "lesser crime[s]" of which the jury could convict Valle if it found him not guilty of the charged crimes did not mention either second degree murder or any other form of criminal homicide.

During closing argument, the prosecutor, after again reading to the jury the court's instruction on first degree murder, stated: "It is clear from any interpretation of the evidence in this case that the defendant is guilty of first degree murder under this felony murder theory. Clearly he entered [The Lord's Church] with the intent to commit theft, he admitted that to his own doctors." The prosecutor also reiterated that for the first degree felony-murder rule to apply, the killing "can be unintentional or accidental. Which, in relation to the discharge of the firearm by this defendant, we argue to you was not accidental. . . . But in any event, it's clear that he's guilty of the first degree murder . . . ." Later, the prosecutor explained that he was "not asking you to find [Valle] guilty of any lesser included offenses." The prosecutor closed by asserting that Valle "is responsible as the actual killer, of first degree murder of Dan Elledge, and that the special circumstances of committing that murder in the first degree during the commission of a burglary and robbery are true . . . ." In his rebuttal, the prosecutor again asserted that he had proven beyond a reasonable doubt every element and issue of "the first degree murder on the felony murder theory."

Defense counsel began her closing argument by explaining that she would not "spend any time telling you that . . . the prosecution, has not proven their case with regard to the robberies, the burglaries, and even the felony murder." Counsel then focused the jury's attention on the difference between first degree felony murder and the alleged special circumstances, explaining: "[W]hat I want to point out is that when you look at the special circum-stances, at first it appears that the felony murder and the special circum-stance are the same thing because you find first degree murder by the felony

murder theory, or the felony murder rule, if you're involved in the commission of a felony in someone's eyes, even if it's accidental, it's first degree murder. [¶] And then you turn to the special circumstance . . . ." She later explained that the special circumstance of committing murder while engaged in a robbery or burglary, which must be considered " '[i]f you find Mr. Valle guilty of murder in the first degree,' " "looks a lot like the vehicle which just got you to first degree murder, which is the felony murder rule." She later repeated that "robbery and then death resulting is recognized [under the law] by the felony murder rule. That's how you get to first degree murder . . . ." In concluding, counsel asked the jury to find the special circumstances allegations not true, while she conceded that Valle was "guilty of . . . the felony murder of Dan Elledge because he was in there when someone died. He was participating in a felony first degree murder robbery."

After closing arguments, the court discussed the verdict forms with counsel. Defense counsel began by asserting that a proposed verdict form on the murder charge contained "a mistake" because it was "a verdict form for premeditated and deliberate murder under [section] 187(a) . . . ." Counsel argued that the form "should read, 'Murder, in violation of Section 189 . . . in that the murder was committed while the defendant was engaged in the commission of a felony, to wit, robbery and/or burglary.' And that would be felony murder under [section] 189." In reply to the court's request that she explain this proposal, counsel replied: "Because . . . that's the theory of the case, that's what we've talked about, that's what's been put on . . . ." Counsel continued: "[M]y concern is with the felony murder language. . . . [¶] . . . I think what it should say is . . . that, 'to wit, this murder was committed during the commission of a felony,' that it's clear they're finding . . . a murder based on felony murder . . . . [¶] There's been so much discussion about—I mean, and the whole theory is that the murder is found by the killing happening during the commission of a felony . . . . [¶] So I think it should be clear to [the jurors] at the time that they are—they are dealing with the verdict on murder or not that it's felony murder, and that's exactly what they're finding."

The prosecution objected to defense counsel's proposal, asserting that a verdict form should never refer to "the theory" or "theories" of the murder. It also explained: "In this case, there is only one theory, so there can't be any confusion as to what [the jury's] finding is, it has to be in the commission of a felony." Apparently agreeing with the prosecution, the court then denied defendant's request that the verdict form refer to the prosecution's legal theory. As in Mendoza's trial, the verdict forms the court submitted to Valle's jury did not give it the option to return a verdict for second degree murder or any lesser form of criminal homicide.

The jury found Valle "guilty of the offense charged in Count I, a felony, to wit, murder in violation of Section 187(a) . . . ." It also found him guilty of second degree robbery and burglary, and found true the special circumstances allegations that he had committed the murder while committing robbery and burglary. After the clerk read these findings aloud, the court asked each juror: "With respect to the verdict of the jury in Count I, a violation of Section 187 . . . , murder, the finding of guilty, was that your individual verdict . . . ?" Each juror answered, "Yes." At the penalty phase of the trial, the jury found that Valle's penalty should be life in prison without possibility of parole, rather than death. The trial court subsequently entered a judgment against Valle for first degree murder and sentenced him in accordance with the jury's finding. The Court of Appeal affirmed the judgment.

## DISCUSSION

The issue here is the proper construction of section 1157, which the Legislature first enacted as part of the Penal Code of 1872. As originally enacted, section 1157 provided: "Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty." In 1951, the Legislature amended this language to make the statute apply "[w]henever a defendant is convicted of a crime which is distinguished into degrees . . . ." (Stats. 1951, ch. 1674, § 109, p. 3849.) As relevant here, the statutory language has remained unchanged since.[2] Thus, the threshold question we must consider is whether, under the facts and circumstances we have set forth above, defendants were "convicted of a crime . . . which is distinguished into degrees" within the meaning of section 1157. If they were not, then the statute does not apply.[3]

Our fundamental task in making this determination is to ascertain the Legislature's intent so as to effectuate the law's purpose. (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 [88 Cal.Rptr.2d 19, 981 P.2d 944].) We begin our inquiry by examining the statute's words, giving them a plain and commonsense meaning. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) In doing so, however, we do not consider the statutory language "in isolation." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Rather, we look to "the entire substance of the statute . . . in order to determine the

---

[2] In 1978, the Legislature added language referencing attempts to commit crimes. (Stats. 1978, ch. 1166, § 4, p. 3771.)

[3] Justice Kennard errs in asserting that section 1157 applies "whenever a crime is 'distinguished into degrees.' " (Dis. opn. of Kennard, J., *post*, at p. 929.) Since its 1951 amendment, the statute has applied by its terms only "[w]henever a defendant *is convicted of* a crime . . . which is distinguished into degrees." (§ 1157, italics added.)

scope and purpose of the provision . . . . [Citation.]" (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665].) That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute . . . .' [Citation.]" (*Ibid.*) We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; see also *Woods v. Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455]; *Title Ins. & Trust Co. v. County of Riverside* (1989) 48 Cal.3d 84, 91 [255 Cal.Rptr. 670, 767 P.2d 1148]; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) We must also avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend. (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224]; *People v. Jeffers* (1987) 43 Cal.3d 984, 998-999 [239 Cal.Rptr. 886, 741 P.2d 1127]; *In re Head* (1986) 42 Cal.3d 223, 232 [228 Cal.Rptr. 184, 721 P.2d 65].)

 Applying these principles, we conclude that defendants were not "convicted of a crime . . . which is distinguished into degrees" within the plain and commonsense meaning of section 1157. We begin by considering the nature of felony murder. In California, the first degree felony-murder rule "is a creature of statute." (*People v. Dillon* (1983) 34 Cal.3d 441, 463 [194 Cal.Rptr. 390, 668 P.2d 697] (*Dillon*).) When the prosecution establishes that a defendant killed while committing one of the felonies section 189 lists, "by operation of the statute the killing is deemed to be first degree murder as a matter of law." (*Dillon, supra,* 34 Cal.3d at p. 465; see also *People v. Rogers* (1912) 163 Cal. 476, 483 [126 P. 143] [§ 189 "in terms makes . . . a killing" committed during robbery "murder of the first de- Thus, there are no degrees of such murders; as a matter of law, a conviction for a killing committed during a robbery or burglary can *only* be a conviction for first degree murder.

That such murders can only be of the first degree has several significant consequences at trial. Where the evidence points indisputably to a killing committed in the perpetration of one of the felonies section 189 lists, the *only* guilty verdict a jury may return is first degree murder. (*People v. Jeter* (1964) 60 Cal.2d 671, 675 [36 Cal.Rptr. 323, 388 P.2d 355]; *People v. Lessard* (1962) 58 Cal.2d 447, 453 [25 Cal.Rptr. 78, 375 P.2d 46]; *People v. Perkins* (1937) 8 Cal.2d 502, 516 [66 P.2d 631].) Under these circumstances, a trial court "is justified in withdrawing" the question of degree "from the jury" and instructing it that the defendant is either not guilty, or is guilty of

first degree murder. (*People v. Riser* (1956) 47 Cal.2d 566, 581 [305 P.2d 1].) The trial court also need not instruct the jury on offenses other than first degree felony murder or on the differences between the degrees of murder. (*People v. Rupp* (1953) 41 Cal.2d 371, 382 [260 P.2d 1]; *People v. Bernard* (1946) 28 Cal.2d 207, 214 [169 P.2d 636].) Nor need it give CALJIC No. 8.70, which provides: "Murder is classified into two degrees. If you should find the defendant guilty of murder, you must determine and state in your verdict whether you find the murder to be of the first or second degree."[4] (*People v. Morris* (1991) 53 Cal.3d 152, 211 [279 Cal.Rptr. 720, 807 P.2d 949], disapproved on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1 [38 Cal.Rptr.2d 394, 889 P.2d 588].) Because the evidence establishes as a matter of law that the murder is of the first degree, these procedures violate neither the right under section 1126 to have a jury determine questions of fact (*People v. Sanford* (1949) 33 Cal.2d 590, 595 [203 P.2d 534]) nor the constitutional right to have a jury determine every material issue the evidence presents. (See *People v. Thornton* (1974) 11 Cal.3d 738, 769, fn. 20 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved on another ground in *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) ■ Finally, if, under these circumstances, a jury returns a verdict for a crime other than first degree murder, the trial court must refuse to accept the verdict because it is contrary to law, and must direct the jury to reconsider. (Cf. *People v. Scott* (1960) 53 Cal.2d 558, 561-562 [2 Cal.Rptr. 274, 348 P.2d 882], disapproved on another ground in *People v. Morse* (1964) 60 Cal.2d 631, 648-649 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810].)

■ The Legislature clearly was aware of many of these principles when it enacted section 1157 in 1872. In proposing the 1872 Penal Code to the Legislature, the California Code Commission explained in its note to section 189 that where a killing occurs during commission of one of the listed felonies, the question of degree "is answered by the statute itself, and the jury have [*sic*] no option but to find the prisoner guilty in the first degree. Hence, . . . all difficulty as to the question of degree is removed by the statute." (Code commrs. note foll., Ann. Pen. Code, § 189 (1st ed. 1872, Haymond & Burch, commrs.-annotators) p. 83.) ■ Where, as here, "a statute proposed by the California Code Commission for inclusion in the Penal Code of 1872 [was] enacted by the Legislature without substantial change, the report of the commission is entitled to great weight in construing the statute and in determining the intent of the Legislature. [Citation.]" (*People v. Wiley* (1976) 18 Cal.3d 162, 171 [133 Cal.Rptr. 135, 554 P.2d 881] (*Wiley*).)

---

[4]Consistent with these principles, the Use Note to CALJIC No. 8.70 states in part: "If the only theory of murder supported by the evidence is first degree felony-murder, do not give this instruction." (Use Note to CALJIC No. 8.70 (6th ed. 1996) p. 456.)

In light of these principles, we conclude that where, as here, the trial court correctly instructs the jury only on first degree felony murder and to find the defendant either not guilty or guilty of first degree murder, section 1157 does not apply. Under these circumstances, as a matter of law, the *only* crime of which a defendant may be convicted is first degree murder, and the question of degree is not before the jury. As to the degree of the crime, there is simply no determination for the jury to make. Thus, a defendant convicted under these circumstances has not, under the plain and commonsense meaning of section 1157, been "convicted of a crime . . . which is distinguished into degrees."[5]

A contrary construction would violate several principles of statutory interpretation. First, it would ignore the obvious purpose of the statute, which is to ensure that where a verdict *other than first degree is permissible,* the jury's determination of degree is clear. Applying section 1157 where jury instructions correctly permit only a first degree felony-murder conviction would do nothing to further this statutory purpose.[6]

Second, a contrary construction would place section 1157 in conflict (rather than in harmony) with the applicable principles regarding jury instructions and permissible verdicts where the evidence points indisputably to a killing committed while perpetrating a felony that section 189 lists, and

---

[5]We are not establishing a rule that depends only on "the theory or theories argued by the prosecution" (dis. opn. of Mosk, J., *post,* at p. 928) or "the evidence presented by the prosecution." (Dis. opn. of Kennard, J., *post,* at p. 938.) Rather, we hold that section 1157 does not apply where the *jury instructions* actually and correctly given do not permit the jury to consider or return a murder conviction other than of the first degree. Moreover, the cases before us do not, as Justice Kennard suggests, involve an attempt "to discover what the jury actually but unspokenly decided as to the degree of the crime charged" (dis. opn. of Kennard, J., *post,* at p. 933) or "to divine what degree of crime the jury found." (*id.* at p. 934.) Rather, as explained, they involve a situation where, under proper instructions, the jury had no degree decision to make.

[6]Nor would applying section 1157 under these circumstances further the statutory purposes the dissenters put forth. Where the trial court properly instructs the jury only on the elements of first degree murder and to convict only if it finds every one of those elements beyond a reasonable doubt, there is no "uncertainty" in the jury's verdict to "avoid." (Dis. opn. of Mosk, J., *post,* at p. 926.) There also is no danger that a jury returning a conviction has not "found all the elements constituting the higher degree of the crime." (Dis. opn. of Kennard, J., *post,* at p. 930; see also dis. opn. of Werdegar, J., *post,* at p. 939.) Based on the evidence, the arguments, and its jury instructions, the trial court here promptly entered first degree murder judgments against defendants. Thus, applying section 1157 would not "promote . . . administrative efficiency." (Dis. opn. of Mosk, J., *post,* at p. 926.) All it would do under the circumstances here is produce second degree murder convictions even though the jury unquestionably found defendants guilty of first degree felony murder. Unlike Justice Mosk and Justice Kennard, we fail to see how this result would further a legislative intent to "promote justice" (dis. opn. of Mosk, J., *post,* at p. 926) or "advance" justice. (Dis. opn. of Kennard, J., *post,* at p. 933.) Justice Werdegar agrees that reducing Valle's conviction to second degree murder "is not a just result for this murderer." (Dis. opn. of Werdegar, J., *post,* at p. 939.)

would "do violence to the principle that the law does not require idle acts. (Civ. Code, § 3532.)" (*Webber v. Webber* (1948) 33 Cal.2d 153, 164 [199 P.2d 934]; see also *People v. Sully* (1991) 53 Cal.3d 1195, 1240 [283 Cal.Rptr. 144, 812 P.2d 163] [refusing to interpret statute to "require idle acts"].) As we have explained, such murders are of the first degree as a matter of law, and where the trial court properly instructs the jury to find a defendant either not guilty or guilty of first degree murder, there is simply no degree determination for the jury to make.

Finally, a contrary construction would produce absurd and unjust results. As we noted at the outset, where section 1157 applies, "[u]pon the failure" of the fact finder to determine degree, "the degree of the crime . . . of which the defendant is guilty, shall be deemed to be of the lesser degree." The Legislature added this provision to section 1157 in 1949 to change the judicially declared rule that a failure to determine degree entitled a defendant to a new trial. (*People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 73 [2 Cal.Rptr.2d 389, 820 P.2d 613] (*Marks II*); Stats. 1949, ch. 800, § 1, p. 1537.) The result of applying it where, under correct instructions, a jury may convict a defendant *only* of first degree felony murder would be both absurd and unreasonable, for it would require courts to deem a conviction to be of a degree that was never at issue and that the jury was neither asked nor permitted to consider. For example, here, as defendant Valle concedes, it would "result[] in [his] being convicted of a lesser crime than the crime of which the evidence showed him to be guilty—in fact, a lesser crime than the crime of which his attorney at trial *conceded* he was guilty." This result would be "neither just nor fair" and would permit " 'form [to] triumph[] over substance.' " (*People v. Escobar* (1996) 48 Cal.App.4th 999, 1027 [55 Cal.Rptr.2d 883] (*Escobar*).) "[T]he law [would be] traduced." (*People v. Johns* (1983) 145 Cal.App.3d 281, 295 [193 Cal.Rptr. 182].) Because "[w]e can think of no explanation why the Legislature could have desired" this absurd and unjust result, we reject a statutory construction that would produce it. (*People v. Broussard* (1993) 5 Cal.4th 1067, 1077 [22 Cal.Rptr.2d 278, 856 P.2d 1134] (*Broussard*) [construing Gov. Code, § 13967]; see also *People v. Dixon* (1979) 24 Cal.3d 43, 52 [154 Cal.Rptr. 236, 592 P.2d 752] [rejecting construction of § 1157 that would lead to "absurd results"]; *In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883] ["[a]bsurd or unjust results will never be ascribed to the legislature"].) Thus, we conclude that when it amended section 1157 in 1951, the Legislature believed and intended that the statute would not apply where the only permissible conviction under proper jury instructions is first degree felony murder, because a defendant

convicted under these circumstances has not been "convicted of a crime . . . which is distinguished into degrees."[7]

In arguing for a contrary interpretation, defendants rely primarily on our decision in *People v. McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011] (*McDonald*). There, the defendant stood trial on a murder charge, with a special circumstance allegation that he committed the murder while robbing or attempting to rob the victim. (*Id.* at p. 355.) The jury returned a verdict finding the defendant " 'guilty of MURDER, in Violation of Section 187 Penal Code, a felony, as charged in Count I of the information.' " (*Id.* at p. 379, italics omitted.) The jury also found the robbery special-circumstance allegation to be true. (*Id.* at p. 355.) We reversed the conviction, holding that the trial court prejudicially erred in excluding expert testimony regarding psychological factors that may affect the accuracy of an eyewitness identification. (*Id.* at pp. 361-377.)

We then turned to "address certain contentions dealing with the crimes for which defendant may be prosecuted on . . . retrial." (*McDonald, supra,* 37 Cal.3d at p. 377.) Among those contentions was the defendant's assertion that "the jury's failure to specify the degree of murder in its verdict render[ed] his conviction second degree murder by operation of law" under section 1157. (*McDonald, supra,* 37 Cal.3d at p. 379.) We noted that this issue was "not likely to arise on retrial in this precise factual form," but discussed the issue because of possible double jeopardy implications, i.e., that retrial for a crime greater than second degree murder might be barred. (*Ibid.*)

---

[7]The principal basis for the statutory interpretation of Justice Mosk and Justice Kennard appears to be their view that it is neither absurd nor unjust to deem a murder conviction to be of the second degree despite proper jury instructions that permit only a first degree murder conviction and despite a defendant's concession that he committed first degree felony murder. (Dis. opn. of Mosk, J., *post,* at p. 926; dis. opn. of Kennard, J., *post,* at p. 934.) Otherwise, they could adopt our construction of section 1157 notwithstanding their belief that it is "contrary to" the statute's "plain language." (Dis. opn. of Mosk, J., *post,* at p. 927; dis. opn. of Kennard, J., *post,* at p. 932.) Writing for a unanimous court, Justice Mosk has stated that statutory language " ' "should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' [Citations.]" (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].) Also writing for the court, Justice Kennard has stated that "the plain meaning of a statute should not be followed when to do so would lead to 'absurd results.' [Citations.]" (*Broussard, supra,* 5 Cal.4th at p. 1072.) "In such circumstances, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citations.]" (*Id.* at pp. 1071-1072.) Although we disagree with their view of section 1157's "plain language" (dis. opn. of Mosk, J., *post,* at p. 927; dis. opn. of Kennard, J., *post,* at pp. 931, 937), our conclusion is nevertheless consistent with *Younger* and *Broussard;* it conforms the letter of the statutory language to the statute's spirit and avoids the absurd consequence of deeming a murder conviction to be of the second degree when, under correct instructions, it could only have been of the first degree. The dissenters' interpretation, on the other hand, would produce this absurd consequence without, as we have explained, furthering the purposes they discuss.

Responding to the defendant's contention under section 1157, the Attorney General argued in part that "because the jury was instructed solely on first degree murder, any verdict of guilt on the murder charge could only be in the first degree. The jury was instructed that before it could return a verdict of guilt on the murder charge, it must unanimously agree on whether defendant was guilty of murder of the first degree. Thus, . . . the jury's verdict of guilty of murder 'as charged' constituted an implied finding of first degree murder." (*McDonald, supra,* 37 Cal.3d at p. 382.)

We rejected this argument, finding "no reason why this variation in the facts should lead to a different result." (*McDonald, supra,* 37 Cal.3d at p. 382.) Quoting *People v. Campbell* (1870) 40 Cal. 129 (*Campbell*), we first opined that "the terms of the statute are unambiguous. No special exception is created for the situation presented by this case; had the Legislature chosen to make section 1157 inapplicable to cases in which the jury was instructed on only one degree of a crime, it could easily have so provided. The statute requires that 'if the jury shall find the defendant guilty, the verdict shall specify the degree of murder . . . . It establishes a rule to which there is to be no exception, and the Courts have no authority to create an exception when the statute makes none.' [Citation.]" (*McDonald, supra,* 37 Cal.3d at p. 382.)

We then stated that "prior [judicial] applications of the statute suggest no rationale for excepting this case from the plain language of section 1157." (*McDonald, supra,* 37 Cal.3d at p. 382.) Again turning to *Campbell*, we continued: "[T]his court in *Campbell* was faced with a dilemma similar to that which [the Attorney General] asserts exists in the present case. In *Campbell*, the People claimed that because the facts alleged in the indictment would support only a conviction of first degree and not of second degree murder, the failure of the jury to specify the degree did not require reversal. The court rejected this contention, stating that 'We have no right to disregard a positive requirement of the statute, as it is not our province to make laws, but to expound them.' (40 Cal. at p. 138.) In interpreting the statutory provision which then required that the jury 'designate' (rather than the equivalent current term 'find') the degree of the crime, the court stated: 'The word "designate," as here employed, does not imply that it will be sufficient for the jury to intimate or give some vague hint as to the degree of murder of which the defendant is found guilty; but it is equivalent to the words "express" or "declare," and it was evidently intended that the jury should expressly state the degree of murder in the verdict so that nothing should be left to implication on that point. . . . [T]he very letter of the statute . . . requires the jury to "designate," or in other words, to express or declare by their verdict the degree of the crime. However absurd it may, at the first

blush, appear to be to require the jury to designate the degree of the crime, when it appears on the face of the indictment that the offense charged has but one degree, there are plausible and, perhaps, very sound reasons for this requirement. . . . But whatever may have been the reasons for this enactment, it is sufficient for the Courts to know that the law is so written and it is their duty to enforce it.' (*Id.* at pp. 139-140.)" (*McDonald, supra,* 37 Cal.3d at p. 383.) Based on *Campbell, McDonald* stated that the Attorney General's "attempt to distinguish the present case on th[e] basis [of the jury instructions] must therefore fail, and it must be deemed as a matter of law that defendant was convicted of second degree murder. [Citation.]" (*McDonald, supra,* 37 Cal.3d at p. 383, fn. omitted.)

On reexamination, we conclude that we should not follow *McDonald*'s discussion of section 1157 under the circumstances in the present cases, and we overrule *McDonald, supra,* 37 Cal.3d 351, to the extent it is inconsistent with this opinion. We first observe that *McDonald*'s discussion of section 1157 was not necessary to that case's resolution. As we have previously noted, although reversing the defendant's conviction because the trial court erroneously excluded expert testimony, *McDonald* went on to discuss the section 1157 issue because of *possible* "double jeopardy considerations" on retrial. (*McDonald, supra,* 37 Cal.3d at p. 379.) However, after stating that under section 1157, the murder conviction was deemed to be of the second degree, for three reasons we declined to consider whether double jeopardy principles barred retrial on first degree murder. "First, the question has not been raised by the parties, and its answer is not immediately obvious. . . . [¶] Second, the issue will not be presented on retrial unless the prosecution seeks a first degree murder conviction. But the prosecution's sole theory of first degree murder at trial was felony murder; given the jury's acquittal of defendant on the robbery charge and thus its implied acquittal on attempted robbery, the prosecution may be hard put to prove an underlying felony. If the prosecution limits itself to a maximum charge of second degree murder on retrial, the double jeopardy issue will manifestly not arise. Finally, as a general rule, the burden is on the defendant to enter a plea of double jeopardy at the appropriate time and to present a basis for the plea." (*McDonald, supra,* 37 Cal.3d at pp. 383-384, fn. 31.) Given the reversal of the conviction on another ground, the parties' failure to raise the double jeopardy issue, and the likelihood the issue would not arise on retrial, it was not necessary in *McDonald* to discuss section 1157's application. (See *Marks II, supra,* 1 Cal.4th at p. 65, fn. 6 ["[a]part from concluding the trial court committed reversible error, no other determination of law was 'necessary to the decision,'" including double jeopardy issue that "would become ripe only if and when the prosecution attempt[s] to reprosecute for the higher degree offense and the defendant raise[s] the bar of once in jeopardy"].)

A decision "is not authority for everything said in the . . . opinion but only 'for the points actually involved and actually decided.' [Citations.]" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399].) "[O]nly the ratio decidendi of an appellate opinion has precedential effect [citation] . . . ." (*Trope v. Katz* (1995) 11 Cal.4th 274, 287 [45 Cal.Rptr.2d 241, 902 P.2d 259].) Thus, "we must view with caution seemingly categorical directives not essential to earlier decisions and be guided by this dictum only to the extent it remains analytically persuasive." (*Marks II, supra,* 1 Cal.4th at p. 66.)

For several reasons, we do not find *McDonald*'s dictum analytically persuasive. Principally, in relying heavily on *Campbell* and quoting from it extensively, *McDonald* failed to consider that *Campbell* did not construe section 1157, but construed a *different* statute with *different* language. *Campbell* construed section 1157's predecessor, section 21 of the Act Concerning Crimes and Punishments (Act section 21). (*Campbell, supra,* 40 Cal. at pp. 137-138.) After defining murder in the first and second degrees, that section provided in relevant part: "[T]he jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, designate by their verdict, whether it be murder of the first or second degree." (Stats. 1856, ch. 139, § 2, p. 219.) As is readily apparent, Act section 21 did not contain the qualifying language of section 1157 we are now construing: "Whenever a defendant is convicted of a crime . . . which is distinguished into degrees." Rather, *without qualification,* Act section 21 imposed a duty to make a degree finding on *every* jury hearing a case in which "any person" was "indicted for murder." (Stats. 1856, ch. 139, § 2, p. 219.) Thus, *Campbell* "cannot be regarded as authority for proper construction of the quite different code section enacted in 1872." (*People v. Valentine* (1946) 28 Cal.2d 121, 144 [169 P.2d 1] (*Valentine*) [construing § 192].) Yet, in basing its discussion of section 1157 exclusively on *Campbell, McDonald* failed to consider, or even acknowledge, the difference in language between section 1157 and Act section 21. It also failed actually to examine section 1157's language or consider its plain and commonsense meaning.

Indeed, the relevant legislative history suggests that the replacement of Act section 21 with section 1157 was a direct legislative response to *Campbell*'s reading of the prior statute. The Legislature enacted section 1157 in 1872, only two years after we decided *Campbell.* In doing so, it deleted the very language—"before whom any person indicted for murder shall be tried"—on which *Campbell* focused in concluding that Act section 21 required *all* juries, without exception, to designate the degree of a murder conviction. (See *Campbell, supra,* 40 Cal. at p. 138.) When it made this change, the Legislature clearly knew of *Campbell*; in proposing section 1157

to the Legislature, the California Code Commission included an explanatory note expressly referencing *Campbell*. (Code commrs., note foll., Ann. Pen. Code, § 1157, *supra*, at pp. 404-405; see also *Wiley, supra,* 18 Cal.3d 162 at p. 171.) ▮ As a general rule, in construing statutes, "[w]e presume the Legislature intends to change the meaning of a law when it alters the statutory language [citation], as for example when it deletes express provisions of the prior version [citation]." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 461 [279 Cal.Rptr. 834, 807 P.2d 1063].) In *Valentine*, we applied this rule in the context of construing section 192, another section of the 1872 Penal Code, holding that "the repeal of" a prior statute, "together with enactment of a new law on the same subject with [an] important limitation deleted, strongly suggests that the Legislature intended" to change the law. (*Valentine, supra,* 28 Cal.2d at p. 143.) ▮ Similarly, the Legislature's repeal of Act section 21, together with its enactment of a new statute on the same subject—section 1157—with significant differences in language, strongly suggests the Legislature intended to change the law. Indeed, here, because the Legislature knew of *Campbell*'s statutory construction, and the omitted word or phrase "was significant to" that construction, the inference of altered intent "is particularly compelling." (*Dix, supra,* 53 Cal.3d at p. 462 [construing § 1170, subd. (d)]; see also *Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659-661 [147 Cal.Rptr. 359, 580 P.2d 1155]; *Oakland Pav. Co. v. Whittell Realty Co.* (1921) 185 Cal. 113, 120 [195 P. 1058] [deletion of language on which court based its statutory interpretation "is a clear indication of the legislative purpose" to change the law].) Thus, it appears that in substantially revising the relevant language when it enacted section 1157, the Legislature was responding to *Campbell* and intended to change the law. *McDonald,* which followed *Campbell* without recognizing the difference in the language of section 1157 and Act section 21, did not even consider this possibility.[8]

Moreover, because *McDonald* failed to acknowledge or consider the significant difference in statutory language, it also failed to recognize that

---

[8]We disagree with Justice Mosk's suggestion that as to section 1157, the legislative history of the 1872 statute "evinces the intent of the Commission for Revision of the Laws to 'preserv[e]' the 'spirit and substance' of existing law." (Dis. opn. of Mosk, J., *post,* at p. 926.) In making this assertion, Justice Mosk partially quotes the preface to the 1872 Penal Code. However, as Justice Mosk elsewhere acknowledges (dis. opn. of Mosk, J., *post,* at p. 926, fn. 1), the partially quoted sentence actually states in full: " 'While *many* sections of existing laws have been redrawn *to correct verbal errors* and *to give them precision and clearness,* their spirit and substance have, in all cases, been preserved.' " (Code commrs., Preface, Ann. Pen. Code, *supra,* at p. vi., italics added.) By its terms, this sentence does not describe the fate under the new code of *all* existing sections, only of " 'many.' " (*Ibid.*) Indeed, only two sentences later, the Preface also states: " 'Many new sections have been introduced, but these were necessary to "supply the defects of and give completeness to the existing legislation of the State." ' " (*Ibid.*) The significant linguistic differences between section 1157 and Act section 21 indicate that section 1157 falls within this latter category of " 'new sections' " that " ' "supply the defects of and give completeness to the existing legislation of the State" ' ";

the focus of *Campbell*'s analysis is not relevant to section 1157's construction. As noted, the jury's duty under Act section 21 to designate the degree of a murder conviction extended to "any person *indicted for* murder." (Stats. 1856, ch. 139, § 2, p. 219, italics added.) Accordingly, the Attorney General's argument and our statutory analysis in *Campbell* focused *exclusively* on the indictment. (*Campbell, supra,* 40 Cal. at pp. 137-141.) Given the language of Act section 21, we had no reason to consider, and our discussion did not mention, whether the trial court instructed the jury that the defendant could be convicted only of first degree felony murder. By contrast, such an instruction is very much relevant in determining whether a defendant has been "convicted of a crime . . . which is distinguished into degrees" within the meaning of section 1157. In simply following *Campbell, McDonald* did not consider this distinction.

Nor did *McDonald* consider that the consequence under Act section 21 of a jury's failure to designate the crime's degree was significantly different from the consequence under section 1157. In *Campbell,* the jury's failure in this regard entitled the defendant to reversal of the judgment and a new trial. (*Campbell, supra,* 40 Cal. at p. 141.) By contrast, section 1157 specifies that upon a jury's failure to make the required determination, the crime's degree "shall be deemed to be of the lesser degree." As we have already explained, where, as here, the only legally permissible conviction under the jury instructions is first degree felony murder, application of this provision produces absurd and unjust results. By failing to consider this point, *McDonald* failed to recognize that the context in which Act section 21 operated was significantly different from that in which section 1157 operates. As we have also already explained, context is important in construing statutory language.[9]

---

section 1157 did not merely " 'correct verbal errors' " in or give " 'precision and clearness' " to Act section 21. (Code commrs., Preface, Ann. Pen. Code, *supra,* at p. vi.)

[9]None of the authorities Justice Kennard cites support her assertion that we "must" interpret section 1157 as *Campbell* interpreted Act section 21. (Dis. opn. of Kennard, J., *post,* at p. 937.) Section 5 states: "The provisions of this Code, *so far as they are substantially the same as existing statutes,* must be construed as continuations thereof, and not as new enactments." (Italics added.) It is inapplicable because, as we have explained, section 1157's language is not substantially the same as that of Act section 21. *People v. Ellis* (1928) 204 Cal. 39, 44 [266 P. 518] (*Ellis*) is inapplicable for the same reason; it expressly invoked the rule of statutory construction that applies where provisions are readopted " 'without change.' " (Cf. *People v. St. Martin* (1970) 1 Cal.3d 524, 535 [83 Cal.Rptr. 166, 463 P.2d 390] [refusing to apply "reenactment rule" where reenacted statute did not " 'use[] the same language' " as the prior one].) *Ellis* did not, as Justice Kennard suggests, "conclud[e]" that the 1872 Penal Code statute there at issue contained "significant changes in wording." (Dis. opn. of Kennard, J., *post,* at p. 937.) *People v. Travers* (1887) 73 Cal. 580, 581 [15 P. 293], does not cite section 5 and states only that the construction of Act section 21 "may guide" section 1157's construction. Moreover, its discussion of *Campbell* was limited to a single descriptive

*McDonald*'s failure to consider these matters is not surprising, given the Attorney General's contentions in that case. The Attorney General in *McDonald* did not argue that because the jury instructions permitted a conviction only of first degree murder, the defendant was not "convicted of a crime . . . which is distinguished into degrees" within the meaning of section 1157, the statute was inapplicable, and a degree determination was unnecessary. Rather, the Attorney General argued that in light of the jury instructions, "the jury's verdict of guilty of murder 'as charged' constituted an implied finding of first degree murder." (*McDonald, supra,* 37 Cal.3d at p. 382.) Thus, the Attorney General in *McDonald* conceded the statute's applicability, but argued that its requirements had been satisfied under the circumstances.

Notably, in *People v. Bonillas* (1989) 48 Cal.3d 757 [257 Cal.Rptr. 895, 771 P.2d 844] (*Bonillas*), we cited similar considerations in refusing to deem *McDonald* binding on another question of section 1157's construction. *Bonillas* held that a jury made a sufficient degree finding under section 1157 where it initially returned a verdict silent as to degree but the next court day returned a supplemental verdict finding the defendant guilty of first degree murder. (*Bonillas, supra,* 48 Cal.3d at pp. 768-770.) As authority for a contrary conclusion, the defendant in *Bonillas* cited *McDonald,* which refused to give effect to an express degree finding in a supplemental verdict the jury made more than three weeks after returning the original verdict. (*McDonald, supra,* 37 Cal.3d at pp. 379-382.) In *Bonillas,* we did not follow *McDonald*'s analysis on this issue, explaining: "[T]he argument of the People in *McDonald* was not that the jury's completing its verdict was proper but that a jury 'finding' of first degree murder could be inferred . . . . [¶] Not only did the People in *McDonald* not argue that the court's attempt to have the jury complete its verdict was proper, it appears in *McDonald* the People conceded it was not. [Citation.] Thus, the propriety of the attempt to complete the verdict was not placed in issue in *McDonald.* It is true that in the portion of the opinion discussing *People v. Hughes* [(1959) 171 Cal.App.2d 362 [340 P.2d 679]], there is some language in *McDonald* that appears to bear on the question, but that language failed to give recognition to the critical distinction between the situation in *McDonald* and the circumstances in *Hughes* . . . ." (*Bonillas, supra,* 48 Cal.3d at pp. 775-776.)

Similarly, as we have already explained, the Attorney General in *McDonald* did not argue that in light of the jury instructions, section 1157 was

sentence, which simply noted that *Campbell* "reversed [a] judgment because the verdict did not designate the degree of the crime." (*Travers, supra,* 73 Cal. at p. 582.) Also, *Travers* construed section 1157 before legislative amendments made it applicable only where the defendant is "convicted of a crime . . . which is distinguished into degrees" and specified the consequence of a jury's failure to make a degree finding. Finally, *Travers* did not consider the question now before us.

inapplicable because the defendant was not "convicted of a crime . . . which is distinguished into degrees" within the meaning of section 1157. As we have also explained, *McDonald*'s discussion failed to recognize the "critical distinction" (*Bonillas, supra,* 48 Cal.3d at p. 776) between the language of Act section 21 and section 1157. Thus, the analytical considerations we cited in *Bonillas* in finding *McDonald*'s discussion of section 1157 "not controlling" (*Bonillas, supra,* 48 Cal.3d at p. 775) apply equally to *McDonald*'s discussion of the section 1157 issue now before us. *McDonald*'s failure to consider the matters we have discussed in following *Campbell*'s application of Act section 21 significantly undermines its discussion of section 1157. (See *Oakland Pav. Co. v. Whittell Realty Co., supra,* 185 Cal. at p. 119 [refusing to follow opinions that "simply followed decisions rendered under previous statutes" without considering changes in statutory language].)

We reject defendants' argument that we may not reconsider *McDonald* because the Legislature has acquiesced in that decision. " 'We are not here faced with a situation in which the Legislature has adopted an established judicial interpretation by repeated *reenactment* of a statute.' (Italics added.) [Citations.] The Legislature has neither reenacted nor amended nor rewritten any portion of [section 1157] since [we decided *McDonald*]. The lawmakers, in short, have simply not spoken on the subject during the intervening years." (*People v. Daniels* (1969) 71 Cal.2d 1119, 1128 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677] (*Daniels*).) "Thus, although the Legislature has not affirmatively disapproved [our] analysis in [*McDonald*], neither has it expressly or impliedly endorsed it. Accordingly, . . . we are free to reexamine our earlier [decision]. [Citations.]" (*People v. Escobar* (1992) 3 Cal.4th 740, 751 [12 Cal.Rptr.2d 586, 837 P.2d 1100].) Indeed, as Justice Mosk wrote for the court in *Daniels,* "while the Legislature may thus choose to remain silent, we may not. It continues to be our duty to decide each case that comes before us; in so doing, we must apply every statute in the case according to our best understanding of the legislative intent; and in the absence of further guidance by the Legislature, we should not hesitate to reconsider our prior construction of that intent whenever such a course is dictated by the teachings of time and experience. . . . Respect for the role of the judiciary in our tripartite system of government demands no less." (*Daniels, supra,* 71 Cal.2d at p. 1128.)

In arguing to the contrary, defendants cite the Legislature's consideration, and rejection, of proposed amendments to section 1157. As introduced in March 1990, Senate Bill No. 2572 (1989-1990 Reg. Sess.) would have amended section 1157 to provide that when a jury fails to determine the crime's degree, instead of deeming the crime to be of the lesser degree, "the trial court or an appellate court may fix the degree . . . if it is able to

determine from other jury findings in the same case the degree the jury intended to fix. If this determination cannot be made, [on timely motion] the defendant shall be entitled . . . to a hearing before a new jury to determine the degree . . . ." (Sen. Bill No. 2572 (1989-1990 Reg. Sess.) § 1.) The Legislature later dropped the proposed amendment to section 1157 and ultimately passed a bill that amended section 1164 to specify "the degree of the crime" as one of the issues the trial court, before discharging the jury, must verify on the record the jury has determined. (Stats. 1990, ch. 800, § 1, p. 3548.)

In 1998 the Legislature again considered amending section 1157. As introduced, Assembly Bill No. 2402 (1997-1998 Reg. Sess.) would have made section 1157 "inapplicable whenever the crime [of which the defendant is convicted] is of the higher degree as a matter of law." (Assem. Bill No. 2402 (1997-1998 Reg. Sess.) § 1.) It also would have added two new subdivisions to section 1157, providing: (1) "The failure to make [a degree] finding shall not prevent the degree from being determined by admitted evidence, the charging instrument, jury instructions given, or other jury findings that were made. In the event the jury fails . . . to record the degree . . . , the court may, in its discretion, set the degree at the higher level where there is clear and reliable evidence to support such a determination. The court shall set forth on the record the facts and reasons for setting the degree at the higher level"; and (2) "If the degree cannot be determined, then the court, in its discretion, may either set the degree at the lower level or order a new trial, the sole issue of which shall be the determination of the degree." (Assem. Bill No. 2402 (1997-1998 Reg. Sess.) § 1.) An amended version of the bill provided: (1) section 1157 "shall only apply to the situation where the finder of fact has a choice as to the degree"; and (2) "If the crime . . . for which the defendant was convicted is a specified degree as a matter of law, upon the failure of the jury to determine the degree . . . , the court may fix the degree as specified. In determining whether the degree of the offense is a specified degree as a matter of law, the court may refer to the descriptive substantive definitions contained in the charging document, any factual finding contained in the verdict form, the fact that the jury was only instructed on a specified degree and not any lesser degree, or the fact that the jury was only instructed on one theory of the case." (Assem. Amend. to Assem. Bill No. 2402 (1997-1998 Reg. Sess.) Apr. 29, 1998.) After another amendment in the Assembly, the bill was sent to the Senate, where it failed in committee.[10]

We do not agree with defendants that these failed attempts to amend section 1157 require us to follow *McDonald*'s discussion of section 1157.

---

[10]Defendants ask that we take judicial notice of legislative materials relating to Senate Bill No. 2572 (1989-1990 Reg. Sess.), and the Attorney General asks that we take judicial notice

As Justice Mosk has written in a majority opinion for this court, " '[u]npassed bills, as evidences of legislative intent, have little value.' [Citations.]" (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 746 [38 Cal.Rptr.2d 650, 889 P.2d 970] (*Granberry*).) Contrary to defendants' assertion, the Legislature's failure to enact the amendments proposed in 1990 and 1998 "demonstrates nothing about what the Legislature intended" when it previously enacted section 1157 with the language we are now construing. (*Harry Carian Sales v. Agricultural Labor Relations Bd.* (1985) 39 Cal.3d 209, 230 [216 Cal.Rptr. 688, 703 P.2d 27].) "At most it might arguably reflect" the Legislature's intent in 1990 and 1998. (*Ibid.*) But it provides very limited, if any, guidance even as to that intent, because the Legislature's failure to enact a proposed statutory amendment may indicate many things other than approval of a statute's judicial construction, including the pressure of other business, political considerations, or a tendency to trust the courts to correct its own errors.[11] (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 506 [87 Cal.Rptr.2d 702, 981 P.2d 543] (*Sierra Club*); *Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 735, fn. 7 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) "We can rarely determine from the failure of the Legislature to pass a particular bill what the intent of the Legislature is with respect to existing law."[12] (*Ingersoll v.*

---

of similar materials relating to Assembly Bill No. 2402 (1997-1998 Reg. Sess.). We grant these unopposed requests.

[11]Regarding the 1998 legislation, the Attorney General cites a Senate committee report that (1) described the proposed amendment as "essentially codif[ying]" the Court of Appeal opinion in this case, (2) reported the view of the California Attorneys for Criminal Justice that the amendment was "unnecessary since the issue of what to do when the jury does not indicate degree is currently in front of the Supreme Court with the *Mendoza* case," and (3) concluded by asking whether the issue "is better resolved by the Supreme Court." (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 2402 (1997-1998 Reg. Sess.) June 30, 1998, pp. 5-6.) The Attorney General finds it "clear" from this report and the proposal's failure in the Senate committee that "the [L]egislature is looking to this Court to correct its error" in *McDonald*. Although we do not adopt the Attorney General's conclusion, we agree that it is at least plausible.

[12]The reliance of Justices Mosk and Kennard on these failed attempts to amend section 1157 (dis. opn. of Mosk, J., *post*, at pp. 926-928; dis. opn. of Kennard, J., *post*, at pp. 934-935) is inconsistent with the decisions we have cited, including Justice Mosk's majority opinion in *Granberry*. The cases Justice Mosk cites do not hold to the contrary. *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 795 [38 Cal.Rptr.2d 699, 889 P.2d 1019], affirms that "only limited inferences can be drawn from" unpassed bills. Neither *People v. Ledesma* (1997) 16 Cal.4th 90 [65 Cal.Rptr.2d 610, 939 P.2d 1310], nor *People v. Bouzas* (1991) 53 Cal.3d 467 [279 Cal.Rptr. 847, 807 P.2d 1076], involved reliance on unpassed legislation. Rather, in both, we invoked the rule of statutory construction that applies where the Legislature reenacts a statute without changing its judicial construction. (*People v. Ledesma, supra*, 16 Cal.4th at pp. 100-101; *People v. Bouzas, supra*, 53 Cal.3d at p. 474.) As we have explained, citing Justice Mosk's majority opinion in *Daniels*, that rule does not apply here because the Legislature has not reenacted or amended section 1157 since we decided *McDonald*. For this reason, we disagree with Justice Werdegar's view that we must adhere to *McDonald*'s

*Palmer* (1987) 43 Cal.3d 1321, 1349 [241 Cal.Rptr. 42, 743 P.2d 1299], fn. omitted.)

 That the Legislature in 1990 ultimately amended section 1164 rather than section 1157 does not require a different conclusion. Legislation adopting *McDonald,* either expressly or impliedly, would logically be placed in section 1157, the specific section at issue, not in section 1164. (Cf. *People v. King* (1993) 5 Cal.4th 59, 76 [19 Cal.Rptr.2d 233, 851 P.2d 27] (*King*) [construing § 12022.5].) Section 1164 contains no reference to *McDonald*'s discussion or even section 1157. Any connection between what is now section 1164 and *McDonald* is too oblique to signal an intent to codify *McDonald*'s discussion. (Cf. *King, supra,* 5 Cal.4th at p. 76.)

Nor does our treatment of *McDonald* in subsequent decisions require that we follow its discussion of section 1157 under the circumstances now before us. Recently, in finding *McDonald*'s discussion of section 1157 irrelevant to construction of another Penal Code section, we stated: "In distinguishing [this] decision[], we do not comment upon [its] reasoning or conclusions." (*People v. Paul* (1998) 18 Cal.4th 698, 710, fn. 10 [76 Cal.Rptr.2d 660, 958 P.2d 412].) And, as previously discussed, citing analytical considerations similar to those that exist here, we refused in *Bonillas* to follow *McDonald*'s analysis regarding the adequacy under section 1157 of degree findings in supplemental verdicts. (*Bonillas, supra,* 48 Cal.3d at pp. 774-776.) Moreover, in *Bonillas,* supplemental verdict forms gave the jury the option of finding *either* first or second degree murder. (*Id.* at p. 768.) Thus, unlike the present cases, *Bonillas* did not involve section 1157's application where the jury's *only* conviction option on a murder charge is first degree murder. As we have often said, we must construe the language of an opinion with reference to the facts the case presents, " 'and the positive authority of a decision is coextensive only with such facts.' [Citations.]"[13] (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 734-735 [257 Cal.Rptr. 708, 771 P.2d 406].)

Defendant Valle asserts that we "unanimously reaffirmed" *McDonald* in *Marks II* and in our earlier decision in the same case, *People v. Marks* (1988) 45 Cal.3d 1335 [248 Cal.Rptr. 874, 756 P.2d 260] (*Marks I*). Valle is correct

---

"illogic[al]" interpretation because the Legislature "has acquiesced to" it. (Dis. opn. of Werdegar, J., *post,* at pp. 938, 939.)

[13]In *People v. Cain* (1995) 10 Cal.4th 1, 53-57 [40 Cal.Rptr.2d 481, 892 P.2d 1224], under circumstances that appear to be similar to those now before us, we followed *Bonillas, supra,* 48 Cal.3d 757, in finding that the trial court had properly reconvened the jury to make a degree finding. In doing so, we neither cited *McDonald, supra,* 37 Cal.3d 351, nor considered the threshold question of whether section 1157 applies where the court instructs the jury only on first degree felony murder.

that those decisions cited *McDonald* in stating that despite the jury's true finding on a special circumstance allegation, under section 1157 defendant's conviction was for second degree murder because the jury failed to make a degree finding. (*Marks II, supra,* 1 Cal.4th at p. 73; *Marks I, supra,* 45 Cal.3d at p. 1344.) However, neither *Marks I* nor *Marks II* states whether, as in the present cases, the trial court instructed the jury *only* on first degree murder. Nor did either decision reconsider or add to *McDonald*'s section 1157 analysis as it relates to the issue we are now considering. Indeed, in *Marks II* we explained that *Marks I*'s brief discussion of section 1157 was not " 'necessary to the decision,' " given our determination there that the trial court "committed reversible error" in another respect. (*Marks II, supra,* 1 Cal.4th at p. 65, fn. 6.) We also explained that our "principal[] concern[]" in *Marks II* was not the meaning of section 1157's first sentence, which contains the language we are now construing, but was "the operation and effect of [section 1157's] second sentence by which a crime is deemed of the lesser degree." (*Marks II, supra,* 1 Cal.4th at p. 71, fn. 12.) Thus, *Marks I* and *Marks II* provide an insufficient basis for following *McDonald*'s discussion in the cases now before us.

We are also mindful that our Courts of Appeal have been critical of *McDonald* and have adhered to it only grudgingly. In *Escobar, supra,* 48 Cal.App.4th at page 1027, the court described the result *McDonald* requires as "neither just nor fair" and a " 'triumph[]' " of " 'form . . . over substance.' " Nevertheless, the court applied section 1157 on facts analogous to those before us "under the compulsion of" *McDonald.* (*Escobar, supra,* 48 Cal.App.4th at p. 1026.) In *People v. Dailey* (1996) 47 Cal.App.4th 747, 749 [55 Cal.Rptr.2d 171], another felony-murder case, the court reluctantly followed *McDonald,* concluding that it was "powerless" to do otherwise even though applying section 1157 might "reduce by decades" the sentences imposed. The court also discussed a number of "troublesome aspects" of this result. (*People v. Dailey, supra,* 47 Cal.App.4th at p. 754.) In *In re Birdwell* (1996) 50 Cal.App.4th 926, 929 [58 Cal.Rptr.2d 244], the court noted that the *McDonald* rule has been "criticized for its inflexibility." And in *Bonillas,* Justice Arguelles wrote a concurring opinion, in which Justices Eagleson and Kaufman joined, that described "the reluctance expressed by the justices of our intermediate appellate courts" to apply *McDonald,* including one who "urg[ed] that *McDonald* . . . be overruled. [Citation.]" (*Bonillas, supra,* 48 Cal.3d at p. 803, fn. 3 (conc. opn. of Arguelles, J.).) The concerns and comments of the Courts of Appeal that have reluctantly followed *McDonald* "should not be ignored." (*Landrum v. Superior Court* (1981) 30 Cal.3d 1, 12 [177 Cal.Rptr. 325, 634 P.2d 352]; see also *King, supra,* 5 Cal.4th at pp. 63, 72-75, 77 [considering criticism by Courts of Appeal in reexamining and overruling precedent].) Indeed, even we have observed that under

*McDonald*, "on occasion 'form triumphs over substance, and the law is traduced' [citation] . . . ." (*Marks II, supra*, 1 Cal.4th at p. 74.)

We also conclude that the principle of stare decisis does not prevent us in these cases from reexamining *McDonald*'s discussion of section 1157. ■ Because of the need for certainty, predictability, and stability in the law, we do not lightly overturn our prior opinions. (*Sierra Club, supra*, 21 Cal.4th at pp. 503-504.) However, this policy does not " 'shield court-created error from correction,' " but "is a flexible one" that permits us "to reconsider, and ultimately to depart from, our own prior precedent in an appropriate case." (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296 [250 Cal.Rptr. 116, 758 P.2d 58]; see also *King, supra*, 5 Cal.4th at p. 78.) A key consideration in determining the role of stare decisis is whether the decision being reconsidered has become a basic part of a complex and comprehensive statutory scheme, or is simply a specific, narrow ruling that may be overruled without affecting such a statutory scheme. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1214-1216 [23 Cal.Rptr.2d 144, 858 P.2d 611].) ■ *McDonald* "sets forth a narrow rule of limited applicability" and has not become a basic part of any comprehensive statutory scheme. (*Sierra Club, supra*, 21 Cal.4th at p. 505.) Thus, "concerns other than stare decisis"—which we have discussed above—"predominate[]"; stare decisis does not mandate our continued adherence to *McDonald*.[14] (*People v. Latimer, supra*, 5 Cal.4th at p. 1216; see also *Landrum, supra*, 30 Cal.3d at p. 14 [we should overrule prior decision rather than "sacrifice legislative policies or create absurd procedures"].)

Finally, "as is customary for judicial case law," we conclude that our holding may be applied to defendants Mendoza and Valle "and is otherwise fully retroactive." (*People v. Birks* (1998) 19 Cal.4th 108, 136 [77 Cal.Rptr.2d

---

[14]Justice Mosk suggests that our conclusion is contrary to the manner in which we have "consistently" construed section 1157. (Dis. opn. of Mosk, J., *post*, at p. 925.) Justice Kennard asserts that we "disregard[]" this court's "consistent" interpretation of section 1157 "as requiring the jury to determine the degree regardless of the evidence or the instructions it receives." (Dis. opn. of Kennard, J., *post*, at p. 929.) And Justice Werdegar insists that we must adhere to "this court's long-standing interpretation of section 1157." (Dis. opn. of Werdegar, J., *post*, at p. 940.) However, neither Justice Mosk nor Justice Kennard cites a case that discusses the issue here other than *McDonald*, a relatively recent (1984) decision. Although, after consideration, we have found *McDonald*'s dictum unpersuasive, we have not simply disregarded it. *People v. Beamon* (1973) 8 Cal.3d 625 [105 Cal.Rptr. 681, 504 P.2d 905] (*Beamon*), which Justice Werdegar cites in addition to *McDonald* (dis. opn. of Werdegar, J., *post*, at p. 941), is not on point; nothing in it indicates that the trial court in that case instructed the jury on only one degree of the charged crime (robbery). On the contrary, by noting that the jury "failed to apply" a factual finding "to fix the degree" of the crime and "refrained from expressly fixing the degree," the *Beamon* opinion suggests that the trial court's instructions did, in fact, direct the jury to fix the crime's degree. (*Beamon, supra*, 8 Cal.3d at p. 629, fn. 2.)

848, 960 P.2d 1073].) Due process principles do not require a different conclusion, because our holding "neither expands criminal liability nor enhances punishment for conduct previously committed. [Citations.] . . . [¶] No other inequity arises from retroactive application of [our] decision." (*Ibid.*) When they committed their crimes, defendants "acquired no cognizable reliance interest" in obtaining a verdict of second degree murder "by the means set forth in" *McDonald*. (*Birks, supra,* 19 Cal.4th at pp. 136-137.) Defendants do not, and cannot, claim that their cases "would have been conducted differently absent" *McDonald*. (*Birks, supra,* 19 Cal.4th at p. 137.) We therefore hold that the trial court properly entered judgments against defendants for first degree murder.

Given our conclusion that section 1157 does not apply in the present cases, we need not consider the Attorney General's alternative contention that article VI, section 13 of the California Constitution precludes us from setting aside defendants' convictions for first degree murder because any error in failure to comply with section 1157 did not "result[] in a miscarriage of justice."

### CONCLUSION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., and Brown, J., concurred.

**MOSK, J.**—I dissent.

Penal Code section 1157 in pertinent part requires: "Whenever a defendant is convicted of a crime . . . which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime . . . of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime . . . of which the defendant is guilty, shall be deemed to be of the lesser degree."

We have consistently, until today, taken the Legislature at its word, strictly construing Penal Code section 1157 to require an express indication by the trier of fact of the degree of the offense. (*People v. McDonald* (1984) 37 Cal.3d 351, 382 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011].) We have specifically rejected the argument, renewed herein, that when a jury is instructed solely on first degree murder, the failure of the jury to designate the degree does not trigger the default provision of the statute. Thus, in *People v. McDonald*, which I authored, we explained: "[T]he statute applies to reduce the degree even in situations in which the jury's intent to convict

of the greater degree is demonstrated by its other actions . . . . [T]he key is not whether the 'true intent' of the jury can be gleaned from circumstances outside the verdict form itself; instead, application of the statute turns only on whether the jury specified the degree in the verdict form. . . . [¶] . . . [¶] . . . No special exception is created for the situation presented by this case [in which the jury was instructed solely on first degree murder]." (*Ibid.*)

Contrary to the majority's assertions, there is nothing "unjust"—let alone "absurd" (maj. opn., *ante*, at p. 911)—about this simple bright-line rule as applied to a case involving a charge of felony murder. The clear legislative aim of the statute and its predecessor, section 21 of the amended Act Concerning Crimes and Punishments, dating back more than a century, is to avoid uncertainty with regard to the jury's actual verdict and to promote justice and administrative efficiency by requiring a verdict that is clear on its face.[1]

Nor is the requirement under Penal Code section 1157 obscure or burdensome: "[The] rule is not arcane nor short on life. It is no Herculean task to require a jury finding on the degree of a murder." (*In re Birdwell* (1996) 50 Cal.App.4th 926, 931 [58 Cal.Rptr.2d 244].) Moreover, as a safeguard against inadvertent failure to specify such a finding in the verdict, Penal Code section 1164 requires the trial court, before discharging the jury, to verify on the record that the jury has reached a verdict on all issues before it, including the degree of the crime charged.

The majority, in a desperate attempt to discredit the analysis in *People v. McDonald, supra,* 37 Cal.3d 351, assert that we erroneously relied therein on an analysis of section 21—a *"different* statute with *different* language" (maj. opn., *ante*, at p. 915)—that was presumptively rejected by the Legislature in enacting Penal Code section 1157 in 1872 (maj. opn., *ante*, at p. 916). The argument is specious; it finds no support in the legislative history, which, as noted, evinces the intent of the Commission for Revision of the Laws to "preserv[e]" the "spirit and substance" of existing law. (Code commrs.,

---

[1]Section 21 of the Act Concerning Crimes and Punishments, as amended, provided: "[T]he jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, designate by their verdict, whether it be murder of the first or second degree." (Stats. 1856, ch. 139, § 2, p. 219.) In *People v. Campbell* (1870) 40 Cal. 129, 139, we held the statute to require that "the jury should expressly state the degree of murder in the verdict so that nothing should be left to implication on that point." Penal Code section 1157, first enacted in 1872, *continued the same requirement,* while broadening it to apply not only to murder, but to any crime divisible into degrees. Indeed, the preface to the 1872 Penal Code indicates the drafters' intent to retain the substance of existing law: "While many sections of existing laws have been redrawn to correct verbal errors and to give them precision and clearness, their spirit and substance have, in all cases, been preserved." (Code commrs., Preface, Ann. Pen. Code (1st ed. 1872, Haymond & Burch, commrs.-annotators) p. vi.)

Preface, Ann. Pen. Code, *supra*, at p. vi.) Nor is there any support in the legislative history for the majority's assertion that the Legislature, in amending Penal Code section 1157 in 1951, must have "believed and intended" that the statute would not apply in the case of felony murder. (Maj. opn., *ante*, at p. 911.)

As we observed in *McDonald*, "had the Legislature chosen to make section 1157 inapplicable to cases in which the jury was instructed on only one degree of a crime, it could easily have so provided." (*People v. McDonald, supra*, 37 Cal.3d at p. 382.) Instead, by its inaction, it has "effectively acquiesced" in this court's interpretation of the statute. (*People v. Bonillas* (1989) 48 Cal.3d 757, 804 [257 Cal.Rptr. 895, 771 P.2d 844] (conc. opn. of Arguelles, J.).) Indeed, entreated to do so by some members of this court (*ibid.*), the Legislature has considered—*and rejected*—proposed amendments to the statute that would have superseded our long-standing judicial construction of its requirements. (See Sen. Bill No. 2572 (1989-1990 Reg. Sess.) § 1; Assem. Bill No. 2402 (1997-1998 Reg. Sess.) § 1.) The majority are grasping at straws in speculating that it is "at least plausible" that the Legislature, after nearly 150 years of consistent decisions in point, was simply " 'looking to this Court to correct its error' in *McDonald*." (Maj. opn., *ante*, at p. 921, fn. 11.) Rather, it is more plausible to conclude that the Legislature's retention of the long-standing requirement that the trier of fact designate degree, despite various amendments and proposed amendments to the statute, implies its continued endorsement of that provision. (See *People v. Ledesma* (1997) 16 Cal.4th 90, 100-101 [65 Cal.Rptr.2d 610, 939 P.2d 1310] [failure to change statute raised the presumption of the Legislature's acquiescence]; *People v. Bouzas* (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076]; cf. *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 795 [38 Cal.Rptr.2d 699, 889 P.2d 1019] [defeat of repeated attempts to amend statute provided additional corroboration of legislative intent].)

Apparently impatient with the continued failure of the Legislature in this regard, the majority undertake to limit the scope of the statute by judicial fiat. Overruling our settled construction of the statute, and contrary to its plain language, they now hold that the statute does not apply in this case because felony murder is not a crime "distinguished into degrees." (Pen. Code, § 1157.) The predicate for such an exception is unsound. It is, of course, true that felony murder, like any other form of murder designated as a crime of the first degree, e.g., murder by poison, by lying in wait, by torture, or any willful, premeditated killing (Pen. Code, § 189), is not further divisible into degrees. But Penal Code section 1157 addresses *generic crimes*, e.g., murder, robbery, burglary, not specific forms of those offenses. Felony murder is not a separate or distinct offense; indeed, defendants in this

matter were charged with, and found guilty of, the crime of "murder" in violation of Penal Code section 187, subdivision (a)—not the crime of "felony murder."

Abandoning the simple bright-line test of *McDonald* that required the verdict to specify on its face the degree of the crime, the majority substitute a new standard under which the failure of the jury to specify degree may be excused—or not—depending on the theory or theories argued by the prosecution. The majority's approach is neither simple nor clear-cut; it will inevitably require examination on a case-by-case basis of the unique facts and circumstances to determine whether Penal Code section 1157 applies. The potential for costly and time-consuming litigation is obvious. Such a result does not, in my view, justify the majority's exercise of what is more appropriately the legislative prerogative.

With regard to the verdicts herein, I agree with Justice Kennard, for the reasons cogently stated in her dissenting opinion, that the failure of the jury to determine the degree of murder of which it found Raul Antonio Valle guilty required that his conviction be deemed to be one of second degree murder. In my view, the same result is required in the case of Cruz Alberto Mendoza because, as in the case of Valle, although the jury found him guilty of the offense of murder, it failed to specify the degree of the crime in the verdict form; nor do the minutes record a verdict specifying the degree of the crime.

Thus, unlike Justices Kennard and Werdegar, I am not persuaded that the trial court's polling of the jurors in the Mendoza case satisfied the requirements of Penal Code section 1157. After the verdict was rendered, finding Mendoza "guilty of the offense charged in Count I, a felony, to wit, murder in violation of Section 187(a) of the Penal Code of the State of California," the jurors were polled as to whether "that was your vote on the charge of murder 187 first degree" and each answered in the affirmative. But they had not been instructed to—and had not—deliberated on or reached a verdict fixing the degree of murder; indeed, Mendoza's request for an instruction requiring the jury to specify degree was rejected. Accordingly, the jurors did not endorse or assent to the verdict *actually returned and recorded in the minutes.* In effect, the trial court, in its polling of the jurors to determine unanimity of the verdict, merely imputed the additional finding to them; it did not purport to correct the verdict by such means or otherwise follow the appropriate procedures for doing so. (Cf. Pen. Code, §§ 1163, 1164; *People v. Cain* (1995) 10 Cal.4th 1, 53-56 [40 Cal.Rptr.2d 481, 892 P.2d 1224]; *People v. Schroeder* (1979) 96 Cal.App.3d 730, 734-735 [158 Cal.Rptr. 220]; *People v. Galuppo* (1947) 81 Cal.App.2d 843, 850-851 [185 P.2d 335].)

Penal Code section 1157, like the statute on ,which it was modeled, "establishes a rule to which there is to be no exception, and the Courts have no authority to create an exception when the statute makes none. [¶] We have no right to disregard a positive requirement of the statute, as it is not our province to make the laws, but to expound them." (*People v. Campbell, supra,* 40 Cal. at p. 138 [construing § 21 of the Act Concerning Crimes and Punishments].)

For these reasons, I would hold that the convictions of Cruz Alberto Mendoza and Raul Antonio Valle must be deemed second degree murder as a matter of law pursuant to Penal Code section 1157.

Accordingly, I dissent.

**KENNARD, J.,** Dissenting—Our Penal Code provides that certain defined murders are "of the first degree" while "[a]ll other kinds of murders are of the second degree." (Pen. Code, § 189.) The Penal Code also provides that whenever a crime is "distinguished into degrees," the jury "must" find the degree of the crime of which the defendant is guilty. (Pen. Code, § 1157; hereafter section 1157.) If the jury fails to so determine the degree, the crime "shall be deemed to be of the lesser degree." (*Ibid.*)

The majority holds that, contrary to the plain language of these statutes, an unwritten exception exists to section 1157: According to the majority, murder is not always a crime divided into degrees, and a defendant should be convicted of first rather than second degree murder notwithstanding the jury's failure to determine the degree if the prosecution presents evidence that would support only a first degree murder conviction and the court so instructs the jury.

I disagree. The majority disregards not only the plain language of section 1157, which admits no exceptions, but also this court's consistent interpretation of section 1157 as requiring the jury to determine the degree regardless of the evidence or the instructions it receives. Rather than rewriting section 1157 to create a novel exception, I would follow its clear command.

I

Defendants Cruz Alberto Mendoza and Raul Antonio Valle were tried by means of the simultaneous presentation of evidence to two separate juries, which separately convicted each defendant of murder, robbery, and burglary. Each jury also found true robbery-murder and burglary-murder special circumstances. Each jury recorded its decisions on written verdict forms, but

the forms did not specify the degree of murder for either defendant. In the case of Mendoza but not Valle, the court polled the jury, asking each juror whether "that was your vote on the charge of murder 187 *first degree*." (Italics added.) Each juror individually answered "yes." The trial court pronounced judgment sentencing each defendant to life without parole, the punishment for first degree murder with a special circumstance.

On appeal, both defendants contended that section 1157 required the reduction of their murder convictions to second degree murder. The Court of Appeal disagreed, holding that, even if the jury's failure to determine degree in the verdict forms violated section 1157, the harmless error provision of article VI, section 13 of the California Constitution applied to the error. The Court of Appeal concluded the errors here were harmless on the ground that the evidence and instructions supported only a conviction for first degree murder under a felony-murder theory, and not a second degree murder conviction.

## II

At issue here is section 1157: "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree." The prosecutor and the trial court bear responsibility for ensuring that the jury or the court complies with section 1157. (Pen. Code, § 1164, subd. (b); *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 77 [2 Cal.Rptr.2d 389, 820 P.2d 613].)

To properly understand the function of section 1157, it is first necessary to recognize two federal "constitutional protections of surpassing importance: the proscription of any deprivation of liberty without 'due process of law,' Amdt. 14, and the guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury,' Amdt. 6. Taken together, these rights indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " (*Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 2355-2356, 147 L.Ed.2d 435], fn. omitted.) Section 1157 safeguards this right not to be convicted of the higher degree of a crime unless the trier of fact, whether judge or jury, has found all the elements *constituting the higher degree of the crime*. Although it might be constitutionally acceptable in cases where the trier of fact has not

expressly stated the degree of the crime to reconstruct its intent from the evidence presented, the jury instructions, the arguments, the information, and other sources, the Legislature has chosen a higher degree of protection, as is its prerogative.

Murder is a crime divided into degrees. Penal Code section 189 divides murder into murders of the first degree and murders of the second degree. First degree murders as defined in section 189 include what are commonly referred to as felony murders—murders "committed in the perpetration of, or attempt to perpetrate," certain other crimes, including robbery. As we have previously recognized, in many homicides the evidence before the jury would permit it to return either a verdict of first degree murder under a felony-murder theory or a second degree murder verdict, in addition to other possible verdicts, depending upon what evidence the jury finds credible. (*People v. Jeter* (1964) 60 Cal.2d 671, 674-676 [36 Cal.Rptr. 323, 388 P.2d 355].)

The prosecution argues that section 1157 does not apply to a jury's failure to determine degree when, as here, the only theory of murder presented to the jury in the instructions and supported by the evidence was first degree murder based on a felony-murder theory. I disagree.

By its plain language, section 1157 applies without regard to the evidence the prosecution has presented in support of the crime or the instructions that the jury has received. Whenever the jury fails to determine the degree of a crime, the conviction by operation of law is "deemed to be of the lesser degree." (*Ibid.*) As the word "deemed" makes clear and as the entirety of section 1157 confirms, in such cases section 1157 makes no inquiry into what determination of degree the jury made or could have made under the facts of the case. Instead, to protect the constitutional rights of defendants the Legislature has created a bright-line rule that when the court and the prosecution fail in their duty to ensure that the jury expressly determines the degree of the crime, the conviction becomes one for the lesser degree of the crime. This is a policy judgment of the Legislature's that we are bound to respect.

Nor is the conclusion that section 1157 contains no exceptions novel. In *People v. McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011], the prosecution asserted that a verdict form finding the defendant guilty of murder without specifying the degree could nonetheless be construed as a first degree murder conviction under section 1157. It argued, as does the prosecution here, that the jury had impliedly found the defendant guilty of first degree murder, given that the jury was instructed only on first degree murder and given that it found true a robbery-murder special circumstance.

In an opinion Justice Mosk wrote for a unanimous court, we rejected that argument: "This precise contention has been rejected in a long line of decisions which require that the degree be explicitly specified by the verdict." (*People v. McDonald, supra,* 37 Cal.3d at p. 380.) We continued: "[T]he statute applies to reduce the degree even in situations in which the jury's intent to convict of the greater degree is demonstrated by its other actions . . . . [T]he key is not whether the 'true intent' of the jury can be gleaned from circumstances outside the verdict form. . . . [¶] . . . [¶] . . . [T]he terms of the statute are unambiguous. No special exception is created for the situation presented by this case; had the Legislature chosen to make section 1157 inapplicable to cases in which the jury was instructed on only one degree of a crime, it could easily have so provided. The statute requires that 'if the jury shall find the defendant guilty, the verdict shall specify the degree of murder . . . . It establishes a rule to which there is to be no exception, and the Courts have no authority to create an exception when the statute makes none.' " (*People v. McDonald, supra,* 37 Cal.3d at p. 382, quoting *People v. Campbell* (1870) 40 Cal. 129, 138.)

### III

Applying section 1157 to the facts of this case yields these results: In the case of defendant Valle, the jury made no determination of the degree of the murder of which it found him guilty. Therefore, section 1157 deems his conviction to be one of second degree murder. In the case of defendant Mendoza, although the written verdict form did not specify the degree of murder, when the court subsequently polled the jurors and asked them whether their verdict was for "murder 187 first degree," they each responded "yes." This oral statement by the jury that Mendoza committed first degree murder is sufficient to satisfy section 1157, for there is no general requirement that the jury give its verdict in written form. (See Pen. Code, §§ 1149, 1164.) Accordingly, his conviction is for first degree murder.

### IV

To rescue the prosecution in this case from its failure to insist that the jury state its finding as to degree in the case of defendant Valle, the majority is forced to adopt a novel and unsupported interpretation of section 1157 that is contrary to the statute's plain language. The majority holds that in a murder case in which the prosecution presents evidence supporting only a first degree murder verdict, murder becomes a crime no longer divided into degrees. (Maj. opn., *ante,* at p. 900.)

The effect of the majority's holding is to treat felony murder as though it were a separate crime. It is not, of course. Rather, it is only one of various

alternative means by which one degree of murder may be committed. Doubtless, the Legislature could have chosen to create felony murder as a separate crime, rather than a form of one degree of murder; equally doubtless, it did not.

The majority ignores a fundamental principle of statutory construction: In determining legislative intent, we begin with the language of the statute, however unwise, ill-crafted, or imprudent we may think it to be. When the statutory language on its face answers the question before us, that answer is binding unless we conclude the language is ambiguous and its plain meaning does not correctly reflect the Legislature's intent. (*People v. Broussard* (1993) 5 Cal.4th 1067, 1071-1072 [22 Cal.Rptr.2d 278, 856 P.2d 1134]; *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

In *People v. McDonald, supra,* 37 Cal.3d 351, 382, this court concluded that section 1157 is unambiguous and applies to every murder case, regardless of the evidence or instructions presented to the jury. In rejecting this conclusion, the majority here makes no claim that section 1157 is ambiguous. Rather, it makes the much more remarkable and far-reaching claim that the *sole* "plain and commonsense meaning" of section 1157 is that whether murder is a crime distinguished into degrees varies, depending on the factual theory of murder that the prosecution pursues. Nothing in section 1157, in section 189, or elsewhere in the Penal Code, however, even hints that whether a crime "is distinguished into degrees" depends on the evidence presented in a particular case rather than on whether the Legislature defined the crime in the Penal Code as a crime divided into degrees. Nor is there any suggestion in the Penal Code that the Legislature intended section 1157 to apply only to some and not all cases in which a jury has failed to determine the degree, depending on the evidence presented in support of the crime charged. The majority's rendering of section 1157 is not a plausible reading of section 1157, much less the sole plausible reading.

Even if the majority's eccentric reading of section 1157 were plausible enough to create a statutory ambiguity, however, the reasons presented by the majority would be insufficient to demonstrate that the majority's reading correctly reflects the Legislature's intent. In section 1157, the Legislature sought to advance justice and protect the rights of defendants. The means it chose was a bright-line rule that does not seek to discover what the jury actually but unspokenly decided as to the degree of the crime charged. Instead, under section 1157 a jury "must" in every case determine the degree. If it fails to, section 1157 "deem[s]" that as a matter of law the defendant may only be convicted of the lesser degree. The statute makes no exceptions to its rule.

Section 1157 by its very nature may result in convictions for the lesser degree of the charged crime in some cases where the jury has probably intended to convict defendant of the greater crime but has failed to expressly state that finding. The Legislature, however, has chosen not to have courts make a case-by-case inquiry into the jury's unstated conclusions to attempt to divine what degree of crime the jury found.

The majority's position is founded on the fallacy that it is absurd and contrary to section 1157's purpose for the Legislature to advance its goal of protecting defendants by means of a bright-line rule. That the Legislature has chosen a bright-line rule that may result in a conviction for the lesser degree in some cases in which the jury would have convicted of the greater degree, however, does not make it absurd to apply the rule to those cases nor does it authorize us to rewrite the rule. There is nothing absurd in deferring to the plain language of Penal Code section 1157 and concluding that the Legislature intended the section to apply to all murder convictions, not just convictions based on certain theories of murder and not others. And it is fully consonant with, not contrary to, section 1157's purpose of protecting the rights of defendants to require in every case that a defendant not be convicted of the highest degree of a crime except when a jury expressly so finds on the record.

By judicially inventing an exception to section 1157 that the Legislature has chosen not to enact, the majority usurps the Legislature's authority. Had the Legislature intended such an exception, it could have easily enacted one, as this court noted in *People v. McDonald, supra*, 37 Cal.3d 351, and as proposed legislation that the Legislature considered and rejected in 1990 and 1998 illustrates.

In 1990, a bill introduced in the Legislature would have permitted the following if the jury failed to expressly determine the degree: "[T]he trial court or an appellate court may fix the degree . . . if it is able to determine from other jury findings in the same case the degree the jury intended to fix. If this determination cannot be made, . . . [on timely motion] the defendant shall be entitled to a hearing . . . before a new jury to determine the degree . . . ." (Sen. Bill No. 2572 (1989-1990 Reg. Sess.) § 1.) This bill was not enacted, and instead the Legislature amended Penal Code section 1164 in 1990 to require trial courts, before discharging a jury, to verify on the record that the jury has determined the degree of the crime.

In 1998, another bill introduced in the Legislature would have permitted the trial court to determine the degree from the "admitted evidence, the charging instrument, jury instructions given, or other jury findings that were

made" and to "set the degree at the higher level where there is clear and reliable evidence to support such a determination." (Assem. Bill No. 2402 (1997-1998 Reg. Sess.) § 1.) If the court was not able to determine the degree, it could then "either set the degree at the lower level or order a new trial, the sole issue of which shall be the determination of degree." (*Ibid.*) The bill was then amended to provide that section 1157 "shall only apply to the situation where the finder of fact has a choice as to the degree" and that "If the crime . . . for which the defendant was convicted is a specified degree as a matter of law, upon the failure of the jury to determine the degree . . . , the court may fix the degree as specified. In determining whether the degree of the offense is a specified degree as a matter of law, the court may refer to the descriptive substantive definitions contained in the charging document, any factual finding contained in the verdict form, the fact that the jury was only instructed on a specified degree and not any lesser degree, or the fact that the jury was only instructed on one theory of the case." (Assem. Amend. to Assem. Bill No. 2402 (1997-1998 Reg. Sess.) Apr. 29, 1998.) This bill too was never enacted.

The majority also rejects as dictum this court's conclusion in *People v. McDonald, supra,* 37 Cal.3d 351, that section 1157 applies in murder cases prosecuted under a felony-murder theory. Whether or not it is dictum is irrelevant, for it is soundly reasoned and reaches the most sensible interpretation of section 1157. Moreover, this interpretation finds support in 150 years of California law, as I discuss next.

Section 1157 derives from a statute originally enacted in 1856 that accomplished several purposes. (Stats. 1856, ch. 139, § 2, p. 219; hereafter the 1856 statute.) The 1856 statute was the first to divide the crime of murder into degrees; previously, murder had been a unitary crime. In doing so, the 1856 statute assigned murder committed in the course of certain felonies to the category of first degree murder. (*Ibid.*) Finally, it required the jury to determine the degree of murder. It accomplished all of this in a single sentence: "All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery or burglary, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree; and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, designate by their verdict, whether it be murder of the first or second degree . . . ." (*Ibid.*)

There is no doubt, and the majority does not dispute, that the plain language of the 1856 statute required the jury in every murder case to

specify the degree of the murder, regardless of the evidence or argument presented in support of the charge. This court so held 130 years ago in *People v. Campbell, supra,* 40 Cal. 129, 138, where we specifically rejected the argument that no determination of degree was necessary if "it is not possible, from the nature of the case, that the accused could be lawfully convicted of murder in the second degree." The court stated: "We have no right to disregard a positive requirement of the statute, as it is not our province to make laws, but to expound them. . . . The word 'designate,' as here employed, does not imply that it will be sufficient for the jury to intimate or give some vague hint as to the degree of murder of which the defendant is found guilty; but it is equivalent to the words 'express' or 'declare,' and it was evidently intended that the jury should expressly state the degree of murder in the verdict so that nothing should be left to implication on that point. . . . However absurd it may, at the first blush, appear to be to require the jury to designate the degree of the crime, when it appears on the face of the indictment that the offence charged has but one degree, there are plausible and, perhaps, very sound reasons for this require-ment. . . . But whatever may have been the reasons for this enactment, it is sufficient for the Courts to know that the law is so written and it is their duty to enforce it." (*Id.* at pp. 138-140.)

It would have been absurd for the court in *People v. Campbell, supra,* 40 Cal. 129, to reach a contrary result. That would have required concluding that, even though the 1856 statute in the same sentence both defined first degree murder to include killings committed in the course of certain felonies and required juries to find the degree of the murder committed, the latter portion of the sentence unaccountably did not apply to the earlier portion.

In 1872, as part of the general codification of California law, the 1856 statute was replaced by section 1157. As originally enacted as part of the Penal Code of 1872, section 1157 provided: "Whenever a crime is distin-guished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty." Section 1157 did change the 1856 statute, but it did so by generalizing the rule's application from the crime of murder alone, as was the case under the 1856 statute, to every crime "distinguished into degrees." The majority here suggests that, by deleting the reference to murder indictments that had been present in the 1856 statute, the Legislature in 1872 intended to abrogate this court's decision in *People v. Campbell, supra,* 40 Cal. 129. Obviously, however, the purpose of deleting the reference to murder indictments was to broaden the statute's application to include all crimes of degree, not to narrow its application to include only some cases of murder. Nor is there any evidence in the legislative history of the 1872 version of section 1157 that it was intended to narrow the 1856

statute. The annotations made to section 1157 by the commissioners who drafted it as part of the 1872 Penal Code cite *Campbell* with apparent approval and without any suggestion that section 1157 was intended to abrogate *Campbell*'s holding. (Code commrs., note foll. Ann. Pen. Code, § 1157 (1st ed. 1872, Haymond & Burch, commrs.-annotators) pp. 404-405.)

Moreover, section 5 of the Penal Code, enacted as part of the 1872 codification and continuing in effect to this day, provides: "The provisions of this Code, so far as they are *substantially* the same as existing statutes, must be construed as continuations thereof, and not as new enactments." (Italics added.) Because section 1157 is substantially the same as the 1856 statute, especially with respect to the crime of murder, "the codified act carries the same [judicial] interpretation as the original one." (*People v. Ellis* (1928) 204 Cal. 39, 44 [266 P. 518] [concluding the bigamy prohibition enacted as part of the 1872 Penal Code should be interpreted the same as pre-1872 bigamy statute, despite significant changes in wording between the two provisions].) That is, we must interpret section 1157 as this court interpreted the 1856 statute in *People v. Campbell, supra,* 40 Cal. 129.

And this court has done so. In 1887, 15 years after the enactment of section 1157, this court relied on *People v. Campbell, supra,* 40 Cal. 129, in interpreting section 1157, explaining its reliance in these terms: "The [1872 Penal] [C]ode has extended this provision to all crimes 'distinguished into degrees.' Therefore the construction given to the clause of the [1856] statute as it existed before the code, in murder cases, may guide us in construing it in its broader application." (*People v. Travers* (1887) 73 Cal. 580, 581 [15 P. 293].)

Since 1872, section 1157 has been amended three times. It was amended in 1949 to provide that the consequence of a jury's failure to specify degree is a conviction for the lesser degree rather than, as formerly, a new trial. (Stats. 1949, ch. 800, § 1, p. 1537.) It was then amended in 1951 to expand its scope to include convictions in court trials as well as jury trials. (Stats. 1951, ch. 1674, § 109, p. 3849.) It was again amended in 1978 to expand its scope to include convictions for attempts to commit crimes of degree. (Stats. 1978, ch. 1166, § 4, p. 3771.) All three amendments retained unchanged the "crime . . . distinguished into degrees" formulation of the original 1872 version of section 1157 and none of them evidenced any intention to limit the application of section 1157 in cases where the prosecution presents evidence directed at only a single degree of a crime.

As this review shows, the majority subverts both the plain language and the long history of section 1157 when it concludes that the statute contains

an unwritten exception whose application depends upon the evidence presented by the prosecution. There is no basis at this late date to change course and abandon our settled conclusion that the statute governs in all cases in which the jury fails to determine degree, an interpretation which faithfully adheres to the statute's plain language.

V

The prosecution argues that, even if defendant Valle's jury failed to comply with section 1157, the judgment imposing on him a first degree murder sentence should be affirmed under article VI, section 13 of the California Constitution (hereafter article VI, section 13). That section provides: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (*Ibid.*)

Article VI, section 13 does not salvage the trial court's judgment punishing Valle for first degree murder. Once the jury returned a verdict of murder without specifying the degree and was discharged, section 1157 made Valle's conviction one for second degree murder by operation of law. The error here was the trial court's failure to recognize that Valle's conviction was for second degree murder and to sentence him accordingly. This error was obviously prejudicial to Valle, resulting in an illegal sentence exceeding the maximum permitted for a second degree murder conviction.

CONCLUSION

For the reasons given above, I would affirm the first degree murder conviction of defendant Mendoza, while I would reduce the first degree murder conviction of defendant Valle to second degree murder.

Werdegar, J., concurred.

**WERDEGAR, J.**—I dissent, albeit reluctantly. The majority opinion amply illustrates the illogic of a strict application of Penal Code[1] section 1157 to the facts of this case. The People proceeded solely on a first degree felony-murder theory when prosecuting defendants; the jury was instructed solely on first degree murder; and, on the facts of this case, the only reasonable verdict for the homicide-related counts was murder in the first degree or

---

[1]All statutory references are to this code.

acquittal. A judgment of murder in the second degree has no factual predicate and, as the majority explains (maj. opn., *ante*, at p. 909), had the jury returned a second degree verdict, the trial court could have refused to accept it, reinstructed the jury, and directed it to reconsider its verdict. (See § 1161.) Accordingly, reducing defendant Raul Antonio Valle's[2] conviction to murder in the second degree is artificial, fails to reflect his true culpability, and is not a just result for this murderer.

Nevertheless, the issue raised in this case transcends our concern that Valle's conviction reflect his true culpability. The history of section 1157, including the recent amendments to both sections 1157 and 1164, subdivision (b), demonstrates persuasively that the Legislature has acquiesced to the fairly rigid interpretation this court has given to section 1157. As explained in Justice Kennard's dissenting opinion, that interpretation, which would require lowering the degree of the murder for defendant Valle, is one of almost ancient lineage.

Section 1157 represents a legislative response to the situation where a jury, in convicting a defendant of an offense divided into degrees, fails to specify the degree of the offense. As the majority explains (maj. opn., *ante*, at p. 911), before the Legislature in 1949 amended section 1157 to provide that in such circumstances the degree of the crime shall be deemed the lesser degree, the judicially declared rule was that a jury's failure to determine degree entitled the defendant to a new trial. Section 1157, therefore, represents the Legislature's considered decision, in fashioning a just remedy for the error, to reject retrial as a remedy. In so doing, the Legislature balanced a variety of factors. These include, on the one hand, the financial cost of retrial, the emotional cost to the victims and other witnesses who must again testify at the retrial, and the possibility the defendant could be acquitted on retrial. Balanced against these costs, on the other hand, are a defendant's constitutional right to have a jury decide all the elements of the charged crime, the infrequency of the error, the ability of the prosecutor to call attention to an omission before the jury is discharged, the statutory duty of the trial court to ensure—and verify on the record—that the jury has reached a verdict on the degree of the crime (§ 1164, subd. (b)), and fairness to the defendant, who would have to run the gauntlet a second time. The Legislature's solution was to eschew retrial, but to reduce the offense to the lesser degree as a matter of law.

That the Legislature's resolution of this problem is not necessarily the one I would have chosen is of no consequence; it is the one the Legislature did

---

[2]I agree with Justice Kennard that the polling of the jury provides sufficient justification to conclude the degree of defendant Valle's murder conviction must be lowered, but that of his codefendant Cruz Alberto Mendoza need not be.

choose and has adhered to. Nor is it, as the majority proclaims, an "absurd" policy choice (maj. opn., *ante*, at pp. 911-912). To balance the complex policy concerns involved in cases in which the jury fails to specify the degree of a crime, and conclude a clear bright-line rule should govern, is not absurd even in those few cases in which a guilty defendant might obtain an unjust benefit.

In any event, it appears the Legislature has acquiesced to this court's long-standing interpretation of section 1157, and we are not at liberty to disregard its views. Judicial restraint and respect for the Legislature's work compel that we adhere to our previous interpretations absent some indication the Legislature intends some different meaning. " '[A]s this court has often recognized, the judicial role in a democratic society is fundamentally to interpret laws, not to write them. The latter power belongs primarily to the people and the political branches of government . . . .' (*Kopp* v. *Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 675 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (conc. opn. of Werdegar, J.).) It cannot be too often repeated that due respect for the political branches of our government requires us to interpret the laws in accordance with the expressed intention of the Legislature. 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' " (*California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175], quoting *Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 365 [5 P.2d 882].)

Members of this court and of the lower appellate courts have urged the Legislature to look at section 1157 anew (see *People v. Bonillas* (1989) 48 Cal.3d 757, 803, fn. 3 [257 Cal.Rptr. 895, 771 P.2d 844] (conc. opn. of Arguelles, J.), and cases cited), explaining in strong language the anomalous results that can occur from a strict application of the statute (see, e.g., *People v. Thomas* (1978) 84 Cal.App.3d 281, 285 [148 Cal.Rptr. 532] (conc. opn. of Ashby, J.) [strict application of § 1157 requires appellate court "to exalt form over substance"]). The Legislature, in 1990, responded by amending section 1164 to require that trial courts, before discharging the jury, ensure that the jury rendered a verdict on the degree of the crime. (Stats. 1990, ch. 800, § 1, p. 3548; see *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 73, fn. 15 [2 Cal.Rptr.2d 389, 820 P.2d 613] [urging "strict compliance [with § 1164] to forestall procedural quagmires"].) This amendment to section 1164 was the Legislature's way of addressing the problem; we should honor the legislative choice.

Although the majority's reinterpretation of section 1157 admittedly would impose on defendant Valle a sentence commensurate with his culpability, I

find I cannot endorse the majority's reasoning without intruding on the role of the Legislature. Accordingly, until that body amends section 1157 to change the statute's meaning from the bright-line rule it now provides to one permitting an examination of the individual facts of each case, I would reluctantly adhere to our previous interpretation of that statute (*People v. McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011]; *People v. Beamon* (1973) 8 Cal.3d 625, 629, fn. 2 [105 Cal.Rptr. 681, 504 P.2d 905]) and therefore dissent.

Appellants' petition for a rehearing was denied September 13, 2000. Mosk, J., Kennard, J., and Werdegar were of the opinion that the petition should be granted.