Filed 3/14/24  P. v. Griffin CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061875 |
| v. | (Super. Ct. No. 16NF2053) |
| DEJON VINCENT GRIFFIN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed.

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Randall Einhorn and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found appellant Dejon Vincent Griffin guilty of murder and found true the special circumstance that the murder was committed during an attempted robbery. After he was sentenced to life, appellant timely noticed an appeal. On appeal, he contends the trial court erred in denying his requested special instruction. We conclude there was no error because the special instruction was duplicative and potentially confusing. Alternatively, any error was harmless beyond a reasonable doubt. Appellant also contends there was insufficient evidence to support the jury's finding he was a major participant who acted with reckless indifference to human life. We conclude there was ample evidence in the record to support the jury's finding. Finally, appellant contends his murder conviction should be reduced to second degree murder because the jury did not make a finding as to the degree of the murder. We conclude this argument is foreclosed by *People v. Mendoza* (2000) 23 Cal.4th 896, 908 (*Mendoza*), in which our high court held there is no degree of murder where the killing occurred during the commission of a robbery or burglary because all such murders are of the first degree. Accordingly, we affirm the judgment.

## FACTS

I. *Procedural History*

In a first amended information, appellant and Aaron Jackson were charged with the murder and attempted robbery of Maher Yousef on July 1, 2016. It was alleged as a special circumstance that the murder was committed during the attempted robbery, and that the defendants each personally used a firearm during the commission of the attempted robbery. It was further alleged both defendants suffered a prior strike conviction under the Three Strikes law and a prior serious felony conviction. The case against appellant and Jackson was consolidated with the case against Jeffrey Tuli, who was charged with the same crimes in a separately filed information. The consolidated case was tried before two juries.

2

On March 24, 2022, an Orange County jury found appellant guilty of murder and found true the allegation he was a "major participant with reckless indifference to human life while engaged in the commission or attempted commission" of robbery. It found appellant guilty of attempted robbery and found true the personal firearm use enhancement. The jury made the same findings with respect to Jackson. A different jury convicted Tuli of first degree murder, and found true the special circumstance allegation and the personal firearm use allegation. The court sentenced both appellant and Jackson to 25 years to life, doubled for the prior strike, consecutive to 15 years for the firearm use and prior conviction enhancements. Tuli was sentenced to life without the possibility of parole consecutive to 25 years to life.

II. *Trial Testimony*

The victim Yousef was the owner of a check cashing services business in Buena Park. Before Yousef's business closed for the day, nearby security video showed a man wearing "a lighter-colored shirt over dark pants" exit a Chevy HHR vehicle and walk over to Yousef's Dodge Charger. The man crouched down and made a "jabbing motion" before running back to the Chevy, which then left the scene.

A.H., a coworker and close friend of Yousef, testified that on July 1, 2016, at around 10:00 p.m., he and Yousef left the business in Yousef's vehicle. Yousef was driving A.H. to his home when Yousef noticed the car was veering to the right. They pulled over into a gas station and noticed a flat tire. Because there were no tools to change the tire, A.H. suggested Yousef call his brother, who lived nearby, to bring them some tools. While waiting for Yousef's brother, A.H. went inside the gas station market to purchase some drinks while Yousef remained in the vehicle.

Security video showed a Chevy HHR vehicle following Yousef's vehicle to the gas station. When A.H. was in the gas station market, appellant, Jackson, and Tuli approached Yousef's vehicle. Appellant arrived first. He drew his gun and pointed it at Yousef and shouted something at Yousef. Later, he took Yousef's cellphone.

3

When A.H. exited the store, he saw three armed men around Yousef's vehicle. Two men were on the driver's side, one of whom was talking to Yousef. A.H. identified the two men as appellant and Jackson. The other man, who A.H. later identified as Tuli, was on the passenger side. Tuli pointed his gun at A.H. before "put[ting] it down." Appellant also pointed his gun at A.H. before asking him, "Where's the money?" After A.H. stated they did not have money, appellant repeated his question before going to the trunk and checking under the spare tire. Appellant then asked, "Where is the shop money?" which caused A.H. to "trip[ ] out" and feel it was a robbery. Tuli then searched under the passenger seat before firing a single shot at Yousef.[1] All three men then ran into the alley.

A motorist who was stopped at a traffic light near the gas station testified he observed three men around Yousef's vehicle, which had its trunk open. One of the men had the front passenger door open, and he was leaning into the vehicle and arguing with someone inside the car. A second man was "digging around" inside the trunk, and the third man was at the driver's side of the car. The motorist saw the person by the front passenger door draw a gun and fire into the vehicle. He heard a "terrible scream" before observing the three men fleeing down an alley. The motorist drove into the gas station and parked. A.H. asked him to help, and the motorist observed that Yousef was "breathing really heavy" and noticed Yousef had been shot in the head. His girlfriend, who had remained inside their vehicle, called 9-1-1.

When police officers responded to the scene, they observed Yousef in the front seat. He was alive and making breathing sounds, but was unresponsive. Paramedics arrived about five to 10 minutes later. Yousef died from the single gunshot wound to the right side of his head.

_____

[1] Although A.H. testified Tuli shot Yousef before rummaging under the passenger seat, the security video of the shooting shows Tuli searched under the passenger seat before shooting Yousef.

4

After police released video of the shooting to the public, appellant's coworker contacted the police and identified appellant as one of the suspects. Subsequently, police obtained warrants for Facebook and cellphone records for all three defendants. A June 11, 2016 livestream video on Jackson's Facebook page showed appellant and Jackson hanging out together. Jackson and Tuli were "Facebook Friends."

The cellphone records showed Jackson and Tuli exchanged 12 phone calls and 48 text messages the day before the shooting. On the day of the shooting, Jackson and Tuli exchanged nine phone calls. That same day, appellant and Jackson exchanged nine phone calls and six text messages. There were no phone communications between appellant and Tuli.

Several weeks later, Jackson was apprehended in Las Vegas, Nevada. Appellant was arrested in Washington state. Tuli was arrested in Riverside, California, for unrelated burglaries.

After Tuli was arrested, he was interviewed by police and the video recording of the interview was played for the jury. In the interview, Tuli stated he was high on drugs the night of the shooting. That day, Jackson and appellant picked up Tuli at his house. Jackson told Tuli about the plan to rob Yousef. It was appellant who flattened the tire of Yousef's car. Appellant had his own gun. Tuli was given a gun that Jackson had on him. Tuli thought the gun was a BB gun. He claimed he never planned to shoot anyone but "panicked" when Yousef tried to get out of the car via the passenger side. After the shooting, they drove back to Tuli's house and got rid of their clothing "off the 91" freeway on the way.

At trial, Tuli testified in his own defense. Tuli and Jackson were friends and coworkers. Before the shooting, Tuli had met appellant twice. Tuli denied participating in the shooting, claiming the three persons involved were appellant, Jackson, and a man named "Nick." Tuli testified he lied when he told police that appellant slashed Yousef's tire and that they got rid of their clothing on the 91 freeway.

5

Tuli stated he took responsibility for the shooting because he was already facing a life sentence for the Riverside robberies.

## DISCUSSION

I.      *Appellant's Murder Conviction Under the Felony-Murder Rule*

  A. *Applicable Law*

    Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 4), which took effect January 1, 2019, amended Penal Code sections 188 and 189[2] to "eliminate[ ] natural and probable consequences liability for murder as it applies to aiding and abetting, and limit[ ] the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) As relevant to this case, section 189, subdivision (e) now provides: "A participant in the perpetration or attempted perpetration of a [robbery] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a *major participant* in the underlying felony and acted with *reckless indifference to human life*, as described in subdivision (d) of Section 190.2." (Italics added.)

    Section 190.2, subdivision (d), provides "every person, not the actual killer, who, with *reckless indifference to human life* and as a *major participant*, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been

---

[2]  All further statutory references are to the Penal Code, unless otherwise indicated.

found to be true." (Italics added.) Among the felonies listed in section 190.2, subdivision (a)(17) is robbery. (§ 190.2, subd. (a)(17)(A).)

The major participant and reckless indifference phrases were "derive[d] verbatim" from United States Supreme Court precedent concerning the permissible scope of capital punishment for felony murder. (*People v. Estrada* (1995) 11 Cal.4th 568, 575 (*Estrada*).) As the California Supreme Court has explained: "It is undisputed that when Senate Bill 1437 amended Penal Code section 189 to incorporate major participation and reckless indifference requirements, it codified the understanding of those requirements elucidated in *Banks*[3] and *Clark*.[4]" (*People v. Strong* (2022) 13 Cal.5th 698, 710 (*Strong*).) "*Banks* elucidated what it means to be a major participant and, to a lesser extent, what it means to act with reckless indifference to human life, while *Clark* further refined the reckless indifference inquiry." (*Strong*, at pp. 706–707.)

In *Banks*, the high court addressed "under what circumstances an accomplice who lacks the intent to kill may qualify as a major participant" for purposes of the felony-murder special circumstance under section 190.2, subdivision (d). (*Banks*, *supra*, 61 Cal.4th at p. 794.) Because the phrase major participant derived from U.S. Supreme Court precedent, the high court analyzed *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*) and *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*), "which articulate[ ] the constitutional limits on executing felony murderers who did not personally kill." (*Banks*, at p. 794.) *Tison* and *Enmund* "place conduct on a spectrum, with felony-murder participants eligible for death only when their involvement is substantial and they demonstrate a reckless indifference to the grave risk of death created by their actions." (*Banks*, at p. 794.) Toward one end of the spectrum was the getaway driver the high court found constitutionally ineligible for death in *Enmund*: a "'minor actor in an armed

---

[3]      *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*).

[4]      *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state.'" (*Banks*, at p. 800, quoting *Tison*, *supra*, 481 U.S. at p. 149.) Toward the other end of the spectrum were the Tison brothers, who had broken convicted murderers out of jail, armed them, captured an innocent family, "held [the family] at gunpoint while the two murderers deliberated whether the family should live or die, [and] then stood by while all four members were shot." (*Banks*, at p. 802.) "Somewhere between them, at conduct less egregious than the Tisons' but more culpable than Earl Enmund's, lies the constitutional minimum for death eligibility." (*Ibid.*)

The *Banks* court proposed certain factors a jury should consider "in determining whether a defendant's culpability is sufficient to make him or her death eligible, these are: What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used? No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.'" (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.)

The *Banks* court also addressed the reckless indifference element, holding that "knowing participation in an armed robbery, standing alone, is insufficient to establish a defendant's reckless indifference to human life." (*Strong*, *supra*, 13 Cal.5th at p. 706.) The California Supreme Court further elucidated on "reckless indifference to human life" in *Clark, supra,* 63 Cal.4th at p. 615. There, the high court noted that the

8

elements of being a "major participant" and "having reckless indifference to human life" significantly overlapped, "'for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.'" (*Ibid.*, quoting *Tison*, *supra*, 481 U.S. at p. 153.) The high court concluded that "reckless indifference" "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, *supra*, 63 Cal.4th at p. 617.)

The *Clark* court set forth a list of non-exclusive factors for consideration in determining whether a defendant acted with reckless indifference to human life. These factors include: "(1) Knowledge of Weapons, and Use and Number of Weapons"; "(2) Physical Presence at the Crime and Opportunities to Restrain the Crime and/or Aid the Victim"; "(3) Duration of the Felony; (4) Defendant's Knowledge of Cohort's Likelihood of Killing"; and "(5) Defendant's Efforts to Minimize the Risks of Violence During the Felony." (*Clark*, *supra*, 63 Cal.4th at pp. 618–622.)

B.      *There Was No Reversible Instructional Error*

The trial court instructed the jury with CALCRIM No. 540B as follows:

"Defendants Griffin and/or Jackson may be guilty of murder, under a theory of felony murder, even if another person did the act that resulted in the death. I will call the other person the perpetrator.

"To prove that the defendant Griffin or Jackson is guilty of first degree murder under this theory, the People must prove that:

"1. The defendant committed or attempted to commit robbery;

"2. The defendant intended to commit robbery;

"3. If the defendant did not personally commit or attempted to commit robbery, then a perpetrator, committed or attempted to commit robbery;

"4. While committing or attempting to commit robbery, the perpetrator caused the death of another person;

9

"5. The defendant was a major participant in the attempted robbery;

"AND

"6. When the defendant participated in the attempted robbery, he acted with reckless indifference to human life.

"To decide whether the defendant and the perpetrator committed or attempted to commit robbery please refer to the separate instructions that I will give you on that crime (CALCRIM 1600 and 460.) You must apply those instructions when you decide whether the People have proved first degree murder under a theory of felony murder.

"The defendant must have intended to commit the felony of robbery before or at the time that he caused the death.

"It is not required that the person die immediately, so long as the cause of death and the felony are part of one continuous transition.

"It is not required that the defendant be present when the act causing the death occurs.

"When you decide whether the defendant Griffin or Jackson acted with *reckless indifference to human life*, consider all the evidence. No one of the following factors is necessary, nor is any one of them necessarily enough to determine whether a defendant acted with reckless indifference to human life. Among the factors you may consider are:

"Did the defendant know that lethal weapons would be present during the robbery?

"Did the defendant know that lethal weapons were likely to be used?

"Did the defendant know that lethal weapons were used?

"Did the defendant know the number of weapons involved?

"Was the defendant near the person killed when the killing occurred?

10

"Did the defendant have an opportunity to stop the killing or to help the victim?

"How long did the crime last?

"Was the defendant aware of anything that would make a coparticipant likely to kill?

"Did the defendant try to minimize the possibility of violence?

"When you decide whether the defendant Griffin or Jackson was a *major participant*, consider all the evidence. No one of these factors is necessary, nor is any one of them necessarily enough, to determine whether the defendant was a major participant. Among the factors, you may consider are:

"What was the defendant's role in planning the crime that led to the death?

"What was the defendant's role in supplying or using lethal weapons?

"What did the defendant know about dangers posed by the crime, any weapons used, or past experience or conduct of the other participants?

"Was the defendant in a position to facilitate or to prevent the death?

"Did the defendant's actions or inaction play a role in the death?

"What did the defendant do after lethal force was used?"

In giving this instruction, the trial court rejected giving appellant's counsel's alternate special jury instruction. The special instruction states:

"Evidence of a defendant's actions after a murder betraying an indifference to the loss of life does not, standing alone, establish that the defendant knowingly created a grave risk of death. [Citation.]

"'No one of these considerations is necessary, nor is any one of them necessarily sufficient.' [Citation.]

"Risk of death alone is insufficient to prove reckless [indifference]. Evidence must show the defendant engaged in conduct that is known to carry a grave risk of death. [Citation.]

11

"Agreeing to participate in armed robbery insufficient as a matter of law. [Citation.]

"Presence of firearm alone is insufficient.  [Citations.]

"Major participation means more than active participation.

"Whereas callousness reflects insensitivity and lack of compassion, reckless indifference is only established when the defendant knowingly creates a serious risk of death.  [Citation.]

"Reckless indifference requires proof that the defendant was aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create.  [Citation.]

"To establish the major participant requirement, 'a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder.'  [Citation.]

"'Awareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient; only knowingly creating a "grave risk of death" satisfies the constitutional minimum' to prove accomplice liability for felony-murder. [Citations.]

"Callous behavior after the fact is not the same as reckless indifference to human life.  [Citation.]

"Reckless indifference encompasses both subjective and objective elements. The subjective element is the defendant's conscious disregard of risks known to him or her. But recklessness is not determined merely by reference to a defendant's subjective feeling that he or she is engaging in risky activities. Rather, recklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.' The question is whether the defendant's disregard of the risk of death involved a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe.  [Citation.]

12

"RIHL DEFINED

"A person acts with reckless indifference to human life when that person knowingly engages in criminal activity that he or she knows involves a grave risk of death. However, the defendant's participation in an armed robbery does not, in itself, constitute engaging in a criminal activity known to carry a grave risk of death. Rather, to find that the defendant acted with reckless disregard of human life you must determine that the defendant was aware of and willingly involved in the violent manner in which the crime was committed, demonstrating reckless indifference to the significant risk of death his or her actions created. Put another way, to find the defendant guilty under this theory you must find that his or her conduct demonstrated a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant did not specifically desire that death as the outcome of his or her actions.

"OR

"'The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create.' [Citation.] '[I]t encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' [Citation.]"

The court observed the proposed special instruction contained "almost verbatim quotes from various appellate opinion[s]," and that "the vast majority of these would be appropriate for argument." The court, however, noted the "strong[ ] caution" against using language from appellate opinions in jury instruction. The court also concluded many of the factors in the special instruction already were covered in the model CALCRIM instruction. The court declined to modify CALCRIM No. 703, the jury instruction on the special circumstance finding, with the proposed language.

The jury was instructed with CALCRIM No. 703 as follows:

13

"If you decide that a defendant is guilty of first degree murder but was not the actual killer, then, when you consider the special circumstance of felony murder during the commission of an attempted-robbery, you must also decide whether the defendant acted either with intent to kill or with reckless indifference to human life.

"In order to prove this special circumstance for a defendant who is not the actual killer but who is guilty of first degree murder as a co-participant, the People must prove that the defendant Griffin or Jackson intended to kill, or the People must prove all of the following:

"1. The defendant's participation in the crime began before or during the killing;

"2. The defendant was a major participant in the crime;

"AND

"3. When the defendant participated in the crime, he acted with reckless indifference to human life.

"A person acts with reckless indifference to human life when he knowingly engages in criminal activity that he knows involves a grave risk of death.

"The People do not have to prove that the actual killer acted with intent to kill or with reckless indifference to human life in order for the special circumstance of felony murder robbery and/or attempted robbery to be true.

"If you decide that the defendant is guilty of first degree murder, but you cannot agree whether the defendant was the actual killer, then, in order to find this special circumstance true, you must find that the defendant Griffin or Jackson acted with reckless indifference to human life and was a major participant in the crime.

"When you decide whether the defendant acted with reckless indifference to human life, consider all the evidence. No one of the following facts is necessary, nor is any one of them necessarily enough, to determine whether defendant Griffin or Jackson acted with reckless indifference to human life."

14

The 15 *Banks* and *Clark* factors were then set forth, as in CALCRIM No. 540B.

On appeal, appellant argues the trial court erred in denying his request to include the definitions for "major participant" and "reckless indifference to human life." We disagree. Here, appellant did not specifically request language defining "major participant" and "reckless indifference to human life," but requested a two-page special instruction which included numerous quotes taken verbatim from appellate court opinions and where the 15 *Banks* and *Clark* factors were already covered under the model CALCRIM instruction. The court did not err because the proposed special instruction was duplicative and potentially confusing. When the trial court denied the request to give the full special instruction, appellant did not narrow the requested instruction only to the definitions. Thus, he forfeits any claim based on a special instruction narrowly tailored to the definitions of "major participant" and "reckless indifference to human life."

Even if not forfeited, any error is harmless beyond a reasonable doubt. First, "reckless indifference" was defined in another jury instruction (CALCRIM No. 703 on special circumstance finding) as, "A person acts with *reckless indifference* to human life when he knowingly engages in criminal activity that he knows involves a grave risk of death." This is almost identical to the proposed instruction that "A person acts with reckless indifference to human life when that person knowingly engages in criminal activity that he or she knows involves a grave risk of death." (See *People v. Clark* (2011) 52 Cal.4th 856, 975 ["The court properly may refuse a proposed instruction, however, when the point is covered in another instruction"].) More importantly, the high court has held that the phrases "major participant" and "reckless indifference to human life" have ordinary meaning that are commonly understood without need for further amplification. (See *Estrada*, *supra*, 11 Cal.4th at p. 578 ["[W]e conclude the generally accepted meaning of the phrase, 'reckless indifference to human life,' in common parlance amply conveys to the jury the requirement of a defendant's subjective awareness of the grave

15

risk to human life created by his or her participation in the underlying felony"]; *Banks*, *supra*, 61 Cal.4th at p. 800–801 ["there is no reason to think either the United States Supreme Court in *Tison* or the drafters of Proposition 115 had in mind a specialized or technical meaning for 'major participant'"]; *People v. Proby* (1998) 60 Cal.App.4th 922, 933 ["we believe the phrase 'major participant' is commonly understood and is not used in a technical sense peculiar to the law"].) It is undisputed the jury was properly instructed on the *Banks* and *Clark* factors that should be considered in determining whether a defendant is "a major participant" who acts with "reckless indifference to human life." Thus, the jury's findings on these elements were properly supported, and it is beyond a reasonable doubt that the omission of the definitions did not contribute to the jury's verdict.

      C.     *Sufficient Evidence Supports the Murder Conviction*

Appellant contends there was insufficient evidence to support his murder conviction for the death of Yousef. Stated differently, he argues no substantial evidence supports the jury's finding that he was a major participant who acted with reckless indifference to human life. "When reviewing a challenge to the sufficiency of the evidence, we ask "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" [Citations.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for "'substantial evidence — that is, evidence which is reasonable, credible, and of solid value'" that would support a finding beyond a reasonable doubt. [Citation.] These same standards apply to challenges to the evidence underlying a true finding on a special circumstance. [Citation]." (*Banks*, *supra*, 61 Cal.4th at p. 804.)

Here, substantial evidence supports the jury's finding that appellant was a major participant. A reasonable jury can infer from the phone calls and texts between appellant and Jackson on the day of the shooting that appellant was involved in planning

16

the armed robbery. Appellant brought his own gun, which he pointed at Yousef and A.H. Based on Tuli's testimony, appellant and Jackson picked him up and supplied him with a loaded weapon. A jury can infer appellant was aware that all three robbers would be armed instead of just one robber, and that any participant who was unarmed would be supplied with a weapon. Appellant was present throughout the entire crime. The trial evidence established appellant slashed the tire on Yousef's car, which not only allowed the robbery to occur, but also placed Yousef in danger of a vehicular accident. The robbers approached Yousef after his companion had left to enter the gas station market, indicating the plan was to isolate Yousef. Appellant was the first person to confront Yousef and the first person to point a gun at him. He took Yousef's cellphone, which prevented the victim from calling for help or recording the incident. Appellant was present when Tuli fired the shot, but did not call 9-1-1 or provide any assistance to Yousef. Instead, appellant fled with his companions, ditched his clothing along the freeway, and later left the state. The record amply supports the jury's finding that appellant was a major participant.

Likewise, there is substantial evidence to support the finding of reckless indifference to human life. Appellant used his own weapon, and as discussed above, it can be inferred he was aware all three robbers would be armed. He was the first to point a gun at Yousef and A.H. (See *Clark*, *supra*, 63 Cal.4th at p. 618 ["A defendant's *use* of a firearm, even if the defendant does not kill the victim or the evidence does not establish which armed robber killed the victim, can be significant to the analysis of reckless indifference to human life"].) He also was present throughout the entire duration of the crime, but did not aid Yousef. There is no evidence he minimized the risk of violence, such as ensuring the guns were unloaded. A reasonable jury also could conclude the only reason appellant put away his weapon after pointing it at A.H. was so his hands could be free to unlock and then search the trunk. Finally, appellant was a major participant in the crime. (*Id*. at p. 615 ["'the greater the defendant's participation in the felony murder, the

17

more likely that he acted with reckless indifference to human life'"].) On this record, substantial evidence supported the jury's finding that appellant acted with reckless indifference to human life.

II.    *Degree of Murder*

Appellant argues that because the jury's verdict did not contain an express finding the murder was in the first degree, his murder conviction must be reduced to second degree murder. We disagree.

Section 1157 states: "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree." However, section 1157 does not apply to a conviction for a killing committed during a robbery or burglary because "there are no degrees of such murders; as a matter of law, a conviction for a killing committed during a robbery or burglary can *only* be a conviction for first degree murder." (*Mendoza*, *supra*, 23 Cal.4th at p. 908.)

Appellant argues *Mendoza* is distinguishable because in that case, the jury was not instructed on first and second degree malice murder whereas in this case, the jury was instructed regarding first and second degree malice murder, although the instruction only referenced Tuli. Those facts do not distinguish this case from *Mendoza* because we presume the jury understood and followed the instructions which limited the finding of first or second degree of murder to Tuli's crime. (See *People v. Hovarter* (2008) 44 Cal.4th 983, 1005 ["'We presume that jurors understand and follow the court's instructions'"].) Moreover, even if the jury had been instructed mistakenly about the degree of appellant's crime, "the *only* guilty verdict a jury may return is first degree murder." (*Mendoza*, *supra*, 23 Cal.4th at p. 908.) Accordingly, *Mendoza* applies and we reject appellant's argument that the jury was required to find the degree of the murder.

18

(See *Auto-Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["Under the doctrine of *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction"].)

## DISPOSITION

The judgment is affirmed.


DELANEY, J.


WE CONCUR:


MOORE, ACTING P. J.


MOTOIKE, J.

19